UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID S. MAURER                          CIVIL ACTION

VERSUS                                   NO: 13-5450

TOWN OF INDEPENDENCE,                    SECTION: R
LOUISIANA, MICHAEL A. RAGUSA,
NICHOLAS J. MUSCARELLO, CARLO
S. BRUNO, DENNIS CROCKER,
JEREMY BAHAM, ERIC ANTHONY,
JONATHAN TALLO, CHRISTOPHER
MCKINNEY, ANTHONY PARROZZO,
TANGIPAHOA PARISH RURAL FIFE
PROTECTION DISTRICT NO. 2,
AND INDEPENDENCE VOLUNTEER
FIRE DEPARTMENT, INC.

## ORDER AND REASONS

Defendants Independence Volunteer Fire Department, Inc.,
Jeremy Baham, Eric Anthony, Jonathan Tallo, Christopher McKinney,
Anthony Parrozzo, Michael Ragusa, and Town of Independence move
to dismiss plaintiff's claims against them pursuant to Federal
Rule of Civil Procedure 12(b)(6).[1] Because plaintiff has failed
to state actionable claims against the moving defendants, the
Court GRANTS both motions to dismiss.

## I.    BACKGROUND

Plaintiff David Maurer is a former employee of the
Independence Volunteer Fire Department. After he was terminated
from his position as fire chief of IVFD, he brought section 1983

---

[1]    R. Docs. 8, 13.

claims for procedural due process violations and state law claims for violations of Louisiana's "Whistleblower Law" and defamation of character against the following twelve defendants.[2] Town of Independence ("Independence") and Tangipahoa Rural Fire Protection District Number 2 (TPD2) are political subdivisions of the state of Louisiana.[3] Michael Ragusa is the mayor of Independence.[4] Nicholas Muscarello and Carlo Bruno are members of the Tangipahoa Parish Council and members of the Board of Commissioners of TPD2, and Dennis Crocker is the administrator of TPD2.[5] Jeremy Baham, Eric Anthony, Jonathan Tallo, Christopher McKinney, and Anthony Parrozzo are members of the board of directors of IVFD, which is a private corporation that provides fire protection services to Independence and the surrounding area.[6] Plaintiff has sued all of the individual defendants in their individual and official capacities.

---

[2] *David S. Maurer v. Town of Independence, Louisiana et al.*, No. 2:13-cv-05910, R. Doc. 1. The Court consolidated cases 13-5910 and 13-5450 on October 2, 2013. *See* R. Doc. 7. In the lead case, No. 13-5450, plaintiff brings claims against Independence for unpaid overtime wages, liquidated damages, and attorneys' fees. *See* R. Doc. 1. Because the motions to dismiss pertain only to No. 13-5910, the Court limits its focus in this order to the complaint filed in that case.

[3] *David S. Maurer v. Town of Independence, Louisiana*, No. 2:13-cv-05910, R. Doc. 1 at 4.

[4] *Id.* at 3.

[5] *Id.*

[6] *Id.* at 4-5.

Plaintiff's complaint alleges the following facts.

**A.    Plaintiff's Appointment and Early Tenure as Fire Chief**

Plaintiff began working as a firefighter for the Independence Fire Department (IFD) in October 2009.[7] At the time, IFD and IVFD jointly provided fire protection services for Independence and the surrounding area.[8] In September 2012, Independence and TPD2 decided to close IFD and hire IVFD as the exclusive provider of fire protection services for the area.[9] The firefighters employed by IFD were to be terminated and then rehired to work for IVFD.[10]

After the municipality made this decision, Dennis Crocker, the fire chief of IFD, became the administrator of TPD2.[11] Crocker asked plaintiff to be the fire chief of IVFD under the "new regime," and plaintiff accepted.[12] In December, plaintiff was officially confirmed as fire chief of Independence and of IVFD, effective January 1, 2013.[13]

--------

[7]     *Id.* at 4.

[8]     *Id.* at 5.

[9]     *Id.* at 5, 7.

[10]    *Id.* at 5.

[11]    *Id.* at 6.

[12]    *Id.*

[13]    *Id.* at 7-8.

3

Plaintiff's tenure as fire chief was marked by numerous clashes with Crocker. One involved plaintiff's decision, made soon after his appointment, to "change[] the way fire trucks responded to emergency calls."[14] Previously, all personnel on duty and all available fire vehicles had responded to every call as a matter of course, but plaintiff instituted a more flexible system, "authoriz[ing] the officer in charge and on duty to make the decision as to the appropriate response to each call."[15] Crocker did not agree with plaintiff's decision, and, according to the complaint, he "continued to act as if he had supervisory authority over the plaintiff," "frequently [coming] to the station and often call[ing] plaintiff telling plaintiff how to do his job."[16]

On January 20, plaintiff learned that Crocker had been "undermining plaintiff as Fire Chief" in conversations with other firefighters.[17] Plaintiff complained about Crocker's behavior to Mayor Ragusa and Nicholas Muscarello, both of whom stated that Crocker should not have been "interfering" with the management of IVFD.[18] According to the complaint, however, Crocker's

---

[14]   *Id.* at 9.

[15]   *Id.*

[16]   *Id.*

[17]   *Id.* at 13.

[18]   *Id.*

"interference" did not abate.[19]

Crocker and plaintiff also butted heads when plaintiff discovered in January 2013 that Crocker had failed to pay several of the fire department's bills during the last portion of his tenure as fire chief.[20] Several months later, a newspaper ran a story about IVFD's failure to pay its bills.[21] Crocker asked plaintiff why he had contacted the media, but plaintiff responded "that he was responding to a press inquiry and that he was not going to lie to cover up what was being done to IVFD."[22]

Yet another conflict arose between Crocker and plaintiff over plaintiff's refusal to hire Crocker's son, Andrew, at IVFD.[23] Plaintiff learned from the Board of Ethics that Andrew could not work for IVFD because of his relationship with Crocker, the administrator of TPD2.[24] Crocker continued to "lobb[y] plaintiff to employ Andrew" even after learning of the Board's decision.[25]

Finally, Crocker and plaintiff clashed over plaintiff's

---

[19]   *Id.* at 14.

[20]   *Id.* at 12.

[21]   *Id.* at 17.

[22]   *Id.* at 17.

[23]   *Id.*

[24]   *Id.* at 16.

[25]   *Id.* at 17.

part-time employment with Hammond Rural Fire Department. In late January, Crocker informed plaintiff that a complaint had been lodged against him.[26] The complaint apparently concerned plaintiff's employment with the Hammond fire department; plaintiff alleges that "Crocker told plaintiff that he could not work part time for Hammond . . . and also be employed as chief of IVFD."[27] Plaintiff told Crocker that he would not make a decision on the matter without speaking to an attorney, and Crocker later told plaintiff "that everything had been worked out."[28]

Plaintiff also encountered conflicts with other town officials that stemmed from a dispute about "compensatory time" that plaintiff believed was owed to several firefighters. In January 2013, after plaintiff had officially assumed his duties as fire chief, he approached Mayor Ragusa about "unpaid compensatory time owed to the firefighters who were formerly employed by the Town of Independence."[29] Ragusa originally promised to "take care of it," but the issue ultimately went unresolved.[30] In April 2013, Ragusa definitively told plaintiff

---

[26]   *Id.* at 14.

[27]   *Id.* at 15.

[28]   *Id.*

[29]   *Id.* at 10.

[30]   *Id.* at 10-12.

that the town was not going to pay the compensatory time.[31]

In May 2013, plaintiff decided not to invite Ragusa or the Independence Aldermen to IVFD's annual "safety meeting/crawfish boil" because the firefighters were "upset with the Town officials about the compensatory time issue."[32] Ragusa and the aldermen were not pleased with the snub. Ragusa intimated that plaintiff's hiring as Fire Chief had created a significant amount of hostility between IVFD and Independence, and one Alderman stated that if the town intentionally failed to "make the next payment," it could select a new fire chief.[33]

## B.   TPD2's Investigation and Plaintiff's Subsequent Termination

On June 25, 2013, Ragusa sent a letter to TPD2 stating that Independence intended to withhold money from IVFD because of misconduct committed by plaintiff.[34] On July 1, 2013, Carlo Bruno and Crocker advised plaintiff of Ragusa's letter and told him that TPD2 would investigate Ragusa's allegations.[35] Bruno stated that TPD2 would inform plaintiff by letter before the investigation began, but upon plaintiff's return to the fire

---

[31]   *Id.* at 18.

[32]   *Id.* at 18.

[33]   *Id.* at 19.

[34]   *Id.* at 21.

[35]   *Id.* at 21-22.

station, he discovered Crocker there, pulling fire reports for the investigation.[36] After thus learning that the investigation had commenced, plaintiff mailed a letter to TPD2 "refut[ing] every allegation contained in Ragusa's letter."[37]

Crocker allegedly "made negative comments about plaintiff for others to hear" during the time he spent at the station conducting his investigation.[38] Upon hearing of this, plaintiff complained to Muscarello and stated that he was concerned that Crocker could not be "fair and impartial" because plaintiff had refused to hire Crocker's son at IVFD.[39] Muscarello responded that TPD2 would address plaintiff's concerns at the next board meeting, but this solution was unsatisfactory to plaintiff, because the investigation set to conclude before that meeting occurred.[40]

Several days into the investigation, Crocker came to the fire station unannounced and conducted an interview with plaintiff.[41] Crocker did not read plaintiff the Firefighter Bill of Rights before the interview, nor did he record the

---

[36]   *Id.* at 22-23.

[37]   *Id.* at 23.

[38]   *Id.*

[39]   *Id.* at 24.

[40]   *Id.*

[41]   *Id.*

8

conversation.[42] During the interview, Crocker asked plaintiff about the allegations in Ragusa's letter, and plaintiff "presented Crocker with documentation refuting" each of the allegations.[43] The complaint does not explicitly identify any of these allegations, but it does state that the last allegation concerned a check for $2,500 written by Austin Davis, a former employee of IVFD.[44] IVFD had paid $2,500 for Davis to attend the LSU Firefighting School, conditional on Davis remaining employed with IVFD for at least two years.[45] Davis left before the two years was up and accordingly refunded the tuition.[46] Crocker, who was still the IVFD fire chief at the time, had the money deposited in the IVFD account, stating "that the funds were originally budgeted for the fire department and if we give it back to the town we will never see it again."[47] In response to Crocker's questioning about the $2,500 deposit, plaintiff showed Crocker documentation proving that Crocker was the fire chief at the time the deposit was made.[48] Crocker, however, "refused to

---

[42]    *Id.*

[43]    *Id.* at 25.

[44]    *Id.*

[45]    *Id.*

[46]    *Id.* at 26.

[47]    *Id.*

[48]    *Id.*

take the documents with him."[49]

Plaintiff also alleges generally that "[o]ther events occurred during Crocker's investigation which indicated that [it] was not being conducted in a fair and impartial manner and that some of the information being provided to Crocker was false."[50]

On July 18, 2013, a TPD2 committee met with Independence officials to discuss the investigation of plaintiff.[51] Five days after that meeting, Anthony Parrozzo stated, "All we are going to have to do is vote and he [plaintiff] is out as fire chief."[52] According to the complaint, Parrozzo had designs on the office of fire chief and wanted to use his close friendship with Crocker in order to replace plaintiff in that position.[53] On July 25, the IVFD held a board meeting, and after the meeting the Board told plaintiff that he would be placed on administrative leave, with pay, pending the conclusion of the investigation.[54] Jeremy Baham, one of the members of the Board, told plaintiff that Bruno had explained to the Board that Mayor Ragusa planned to withdraw funding from IVFD and dissolve the corporation if plaintiff

---

[49]   *Id.*

[50]   *Id.* at 27.

[51]   *Id.* at 28.

[52]   *Id.*

[53]   *Id.* at 28-29.

[54]   *Id.* at 29.

remained fire chief.[55]

Plaintiff complained to Muscarello that he had never had an opportunity to defend himself against Ragusa's allegations before being placed on leave, but Muscarello declined to give plaintiff any details about the ongoing investigation.[56] On July 29, following a meeting of the IVFD Board, plaintiff was terminated from his position as fire chief.[57]

According to the complaint, the IVFD Board never produced a written report of the results of the investigation that led to plaintiff's termination.[58] Two board members who were not at the July 29 meeting requested such a report from the rest of the Board, but they did not receive one.[59] On July 31, plaintiff's attorney unsuccessfully tried to arrange a meeting with officials from TPD2 and Independence.[60] Plaintiff's attorney then requested a report of the investigation.[61] Plaintiff and his attorney eventually met with an attorney for TPD2 on September 4.[62] At

---

[55]     *Id.* at 30.

[56]     *Id.* at 30-31.

[57]     *Id.* at 31-32.

[58]     *Id.* at 32.

[59]     *Id.*

[60]     *Id.* at 33.

[61]     *Id.*

[62]     *Id.*

that meeting, the TDP2 attorney stated that there was no report from the investigation, and that Ragusa's allegations were not the reason for plaintiff's termination.[63] Instead, plaintiff had been terminated because of three allegations, which the complaint terms the "Speed allegations": (1) "plaintiff was only sending two firefighters to fire calls;" (2) "IVFD was never short of money; Crocker told TDP2 and IVFD had over $500,000.00 available;" and (3) "two fire engines were broken down for an extended period of time."[64] Plaintiff responded that the Speed allegations were false.[65] His complaint explains in some detail precisely why he believes the allegations are untrue.[66]

## C.   Plaintiff's Causes of Action

Plaintiff asserts four causes of action based on the foregoing events. First, he claims that each of the defendants deprived him of his employment without due process of law because the investigation of plaintiff violated the Louisiana Firefighters' Bill Of Rights, La. Rev. Stat. § 33:2181,[67] and because TPD2, Independence, and IVFD violated certain contractual

---

[63]   *Id.* at 34.

[64]   *Id.*

[65]   *Id.* at 34-36.

[66]   *Id.*

[67]   *Id.* at 36-39.

12

provisions that created a third-party benefit for firefighters.[68] Second, plaintiff alleges a section 1983 "stigma-plus-infringement" claim against all defendants.[69] Third, plaintiff claims that Ragusa and Independence violated Louisiana's "Whistleblower Law," La. Rev. Stat. § 23:967.[70] Finally, plaintiff alleges that Ragusa, Muscarello, Bruno, Parrozzo, and Crocker defamed him.[71]

Defendants IVFD, Baham, Anthony, Tallo, McKinney, and Parrozzo (the "IVFD defendants"), now move to dismiss plaintiff's claims against them under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[72] Mayor Ragusa and Independence have also moved to dismiss for failure to state a claim.[73]

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[68]    *Id.* at 39-42.

[69]    *Id.* at 42-44.

[70]    *Id.* at 44-45.

[71]    *Id.* at 45-46.

[72]    R. Doc. 8.

[73]    R. Doc. 13.

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009).

A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

### A.   Procedural Due Process Claim

The IVFD defendants contend that plaintiff's section 1983 claim against them are doomed at the threshold because their

14

conduct was not "state action" subject to section 1983. *See Frazier v. Bd. of Trustees*, 765 F.2d 1278, 1283 (5th Cir. 1985) (party asserting a section 1983 claim must show that his loss "stemmed from conduct fairly attributable to the state"); *see generally Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 561 U.S. 288 (2001) (discussing the state action doctrine). The Court need not decide this issue, however, because even assuming that the IVFD defendants' conduct was "fairly attributable to the state," plaintiff has failed to state a section 1983 due process claim against any of the moving defendants.

When confronted with a procedural due process claim, a court must determine, first, whether the plaintiff has a property or liberty interest that cannot be taken away without procedural protections; and second, if so, how much process is due. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))). Plaintiff asserts that the Due Process Clause applies here because he had a property interest in his employment by reason of a state statute, the Louisiana Firefighter Bill of Rights, and a contract among TPD2, Independence, and IVFD. The Court finds no merit in plaintiff's arguments that he has a property interest in his employment, and therefore holds that plaintiff has failed to show that he was

15

entitled to any procedural protections before his termination.

### 1. *Violation of the Firefighter Bill of Rights*

The Louisiana Firefighter Bill of Rights mandates that certain "minimum standards" apply whenever a "fire employee" is under investigation, La. Rev. Stat. § 33:2181(B), and provides that "[a]ny discipline, demotion, dismissal or adverse action of any sort taken against a fire employee without complete compliance with the provisions of [the statute] is an absolute nullity[.]" La. Rev. Stat. § 33:2181(C).

The Court finds that these provisions are not applicable to plaintiff because he is not a "fire employee" within the meaning of the statute. A "fire employee" is defined as "any person employed in the fire department of any municipality, parish, or fire protection district maintaining a full-time regularly paid fire department, regardless of the specific duties of such person within the fire department, and who is under investigation with a view to possible disciplinary action, demotion, or dismissal." La. Rev. Stat. § 33:2181(A)(1). Plaintiff was employed by IVFD, a private corporation, *not* by Independence or Tangipahoa Parish.[74]

---

[74] *David S. Maurer v. Town of Independence, Louisiana et al.*, No. 2:13-cv-05910, R. Doc. 1 at 4 (alleging that IVFD is a "domestic corporation"); *id.* at 5 (alleging that plaintiff's employment with Independence was terminated and he was then hired by IVFD); *see also* R. Doc. 21-1 at 5 ("It is uncontradicted that IVFD is a non-profit corporation which provides fire protection services in certain designated areas of Tangipahoa Parish.").

16

Accordingly, under the plain terms of the statute, the Firefighter Bill of Rights does not apply to plaintiff.

This conclusion is buttressed by comparing the above-quoted statute with La. Rev. Stat. § 33:1991, which is contained elsewhere in the Part of the Louisiana Revised Statutes entitled "Fire Department." Section 33:1991 contains definitions for the Subpart on minimum wages and maximum hours for firefighters, and it provides as follows:

> The word "fireman," as used in this Subpart includes all persons employed or engaged full-time by municipalities or municipal fire departments, parishes or parish fire departments, or fire protection districts for firefighting or fire prevention duties and services, *as well as employees of nonprofit corporations under contract with a fire protection district or other political subdivision to provide such services*, including operators of the fire-alarm system when such operators are members of the regularly constituted fire department. The word "fireman" does not include carpenters, storekeepers, machinists, clerks, building hazard and similar inspectors, physicians, or other non-firefighting employees detailed for such special duties, nor does the word "fireman," except as otherwise provided in this Subsection, include employees of privately owned or operated firefighting or fire prevention services.

La. Rev. Stat. § 33:1991(A)(1) (emphasis added). Thus, the Louisiana legislature specifically included firefighters employed by nonprofit corporations that contract with political subdivisions to provide fire protection services in the definition of "fireman" in section 33:1991, but it did not specifically include such firefighters in the definition of "fire employee" in the Firefighter Bill of Rights. It follows that

17

section 33:2181 does not apply to employees of private organizations such as IVFD.

*West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83 (1991) is instructive in this regard. There, the Supreme Court held that the term "attorney's fees" in the fee-shifting provision of 42 U.S.C. § 1988 did not include expert witness fees because many other fee-shifting statutes explicitly allowed for shifting of both attorney's fees *and* expert witness fees. *Id.* at 88-92. The Court explained that "this statutory usage shows beyond question that attorney's fees and expert fees are distinct items of expense. If . . . the one includes the other, dozens of statutes referring to the two separately becomes an inexplicable exercise in redundancy." *Id*. at 92. So it is here as well. If a private corporation such as IVFD were considered to be the "fire department of a[] municipality, parish, or fire protection district" within the meaning of section 33:2181, there would have been no need for the Louisiana legislature to refer separately to "municipal fire departments, parishes or parish fire departments, or fire protection districts," and to "nonprofit corporations under contract with a fire protection district or other political subdivision to provide [fire protection] services" in section 33:1991. *Cf. Casey*, 499 U.S. at 101 (courts should not "treat alike subjects that different Congresses have chosen to treat differently"); *Pa. Dep't of Public Welfare v. Davenport*, 495 U.S.

552, 562 (1990) (expressing "a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment").

Plaintiff cites no authority contrary to the preceding analysis. Accordingly, the Court concludes that plaintiff is not a "fire employee" within the meaning of La. Rev. Stat. § 33:2181(A)(1), and does not enjoy the protections of the Firefighter Bill of Rights. Thus, he cannot bring a procedural due process claim based on a violation of that statute.

### 2. Breach of Contract

Plaintiff alleges that TPD2, Independence, and IVFD "individually and collectively knowingly and deliberately violated the specific terms" of a contract among the three entities that "regulates the conduct described in th[e] complaint."[75] The nature of defendants' alleged breach is somewhat unclear from the complaint, but it appears that the parties to the contract did not invoke its "dispute resolution procedure" when Mayor Ragusa advised TPD2 of his intention to withhold money from IVFD.[76] Plaintiff alleges that he is a third

---

[75]    *David S. Maurer v. Town of Independence, Louisiana et al.*, No. 2:13-cv-05910, R. Doc. 1 at 39-40.

[76]    *Id.* at 41 (alleging that Mayor Ragusa and Independence "deliberately ignored" the dispute resolution procedure and that TPD2 and IVFD "acquiesced in and deliberately encouraged the circumvention" of the procedure).

19

party beneficiary of this contract and thus is entitled to sue for its breach.[77]

A court will not find a contract to contain a provision benefitting a third party, called a "stipulation *pour autrui*," unless "the stipulation for a third party is manifestly clear." *Joseph v. Hosp. Serv. Dist. No. 2*, 939 So. 2d 1206, 1212 (La. 2006). Plaintiff has pled no facts plausibly suggesting that any contract among IVFD, Independence, and TPD2 contains a "manifestly clear" stipulation for his benefit. His conclusory assertion that one exists is insufficient to survive a motion to dismiss. *See JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, Civil Action No. 13-4888, --- F. Supp. 2d ---, 2013 WL 4776502, at *4 (E.D. La. Sep. 4, 2013) (plaintiff's mere allegation that he is third party beneficiary to a contract is insufficient to survive a motion to dismiss unless he "plead[s] factual content that allows the Court to draw the inference that [defendant] is liable under a third-party beneficiary . . . theory" (citing *Iqbal*, 556 U.S. at 678)); *see also Lopes v. State Farm Mut. Auto. Ins. Co.*, No. Civ.A. 3:00CV1053L, 2001 WL 237383, at *3 (N.D. Tex. Mar. 6, 2001) (plaintiff's conclusory allegation that he was a third party beneficiary of an insurance contract was insufficient to state a claim against the insurer for breach of the contract). Accordingly, the Court finds that plaintiff has not pled a

---

[77]    *Id.* at 40.

procedural due process claim based on defendants' alleged contractual breaches.

### 3.   Civil Service System

In his opposition to defendants' motion to dismiss, plaintiff appears to suggest that he had a property interest in his employment that could not be taken away without due process by virtue of the Louisiana Constitution, which provides that all municipalities and fire protection districts operating a "regularly paid fire department" must establish a classified civil service system. La. Const. art. 10 § 16.[78] But, as defendants correctly point out in their reply brief, volunteer fire departments such as IVFD that contract with municipalities to provide fire protection services are not subject to that requirement. *See Heintz v. City of Gretna*, 683 So. 2d 926, 928 (La. Ct. App. 1996). Volunteer fire departments "are 'operated' by their membership, and not by the municipality," and so need not establish a civil service system. *Id.*

Here, plaintiff alleges that he was employed by IVFD -- not by Independence or TPD2. Thus, he cannot assert a procedural due process claim based on the foregoing provision.

## B.   "Stigma-Plus-Infringement" Claim

If a government employee is "discharged in a manner that

---

[78]   *See* R. Doc. 21-1 at 6-7.

creates a false and defamatory impression about him and
forecloses him from other employment opportunities," the employee
has a procedural due process right to "notice and an opportunity
to clear his name." *Bledsoe v. City of Horn Lake*, 449 F.3d 650,
653 (5th Cir. 2006) (quoting *White v. Thomas*, 660 F.2d 680, 684
(5th Cir. 1981)). A plaintiff alleging a violation of this
procedural right must prove seven elements in order to make out a
"stigma-plus-infringement" claim:

> (1) he was discharged; (2) stigmatizing charges were made
> against him in connection with the discharge; (3) the
> charges were false; (4) he was not provided with notice
> or an opportunity to be heard prior to the discharge; (5)
> the charges were made public; (6) he requested a hearing
> to clear his name; and (7) the employer denied the
> request.

*Id*.

Even assuming that plaintiff qualifies as a public employee
for purposes of this analysis, plaintiff has failed to plead a
stigma-plus-infringement claim against any of the moving
defendants.

With regard to the IVFD defendants, plaintiff has not
alleged that IVFD or any of its board members *publicly* made any
false or stigmatizing charges against him in connection with his
termination. Plaintiff has alleged only that IVFD communicated
privately to him that he was terminated. That is an insufficient
basis for a stigma-plus-infringement claim. *See Bishop v. Wood*,
426 U.S. 341, 348 (1976) (private communications to the employee

are not "public" and cannot firm the basis of a stigma-plus-infringement claim); *Hughes v. City of Garland*, 204 F.3d 223, 228 (5th Cir. 2000) (stigma-plus-infringement claim requires "intentional or official" disclosure by the plaintiff's employer); *Blackburn v. City of Marshall*, 42 F.3d 925, 936 n.10 (5th Cir. 1995) ("A prerequisite to raising a liberty interest claim based on stigma is that the statement be made public by the defendant."); *Nichols v. Univ. of S. Miss.*, 669 F. Supp. 2d 684, 697 (S.D. Miss. 2009) (noting that the "public" element requires actual publication of the stigmatizing statements, not merely the failure of the employer to keep a complaint against the employee confidential). True, the complaint plausibly alleges that various individuals gossiped about plaintiff's situation, but employers have no constitutional "duty of rumor control." *Nichols*, 669 F. Supp. 2d at 697; *accord Hughes*, 204 F.3d at 228. Plaintiff's stigma-plus-infringement claim against the IVFD defendants is further deficient because he has not alleged that he requested a hearing with IVFD and was denied. *See LaRivia v. Cerise*, 462 F. App'x 459, 462 (5th Cir. 2012) (plaintiff bringing a stigma-plus-infringement claim must show that he requested and was denied a name-clearing hearing).

Turning to Mayor Ragusa and Independence, plaintiff has failed to allege that either defendant made stigmatizing statements in connection with plaintiff's termination. To be

stigmatizing, a statement must be more than merely adverse; "it must be such as would give rise to 'a badge of infamy, public scorn or the like,'" *Blackburn*, 42 F.3d at 936 (quoting *Wells v. Hico ISD*, 736 F.2d 243, 256 & n.16 (5th Cir. 1984)), and foreclose the employee from other employment opportunities, *see White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981) (damage to reputation alone is insufficient to create a stigma-plus-infringement claim without stigmatization sufficient to foreclose future employment opportunities); *Nichols*, 669 F. Supp. 2d at 697 (same). "Courts have routinely held that 'merely conclusory allegations that Plaintiff was stigmatized, that her reputation was substantially damaged and that she lost professional standing are insufficient without factual support to allege a plausible stigma-plus claim." *Miley v. Housing Auth. of City of Bridgeport*, 926 F. Supp. 2d 420, 432-33 (D. Conn. 2013) (collecting cases). Plaintiff vaguely alleges that Ragusa wrote a letter to TPD2 that contained some negative comments about the plaintiff, but he has failed to plead facts plausibly suggesting that Ragusa's comments exposed plaintiff to public scorn or foreclosed his opportunities for future employment. Plaintiff's conclusory designation of Ragusa's statements as "stigmatizing," without more, is insufficient. *Miley*, 926 F. Supp. 2d at 432-33; *see also Iqbal*, 556 U.S. at 678 (court need not accept as true a "legal conclusion couched as a factual allegation").

24

**C.   Violation of the Whistleblower Law**

Plaintiff alleges that Independence and Mayor Ragusa violated Louisiana's "Whistleblower Law," which provides as follows:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. Rev Stat. § 23:967.

Plaintiff has not alleged that he "disclose[d] or threaten[ed] to disclose a workplace act of practice that is in violation of state law," that he provided information to a public body conducting an investigation into a violation of law, or that he "object[ed] to or refuse[d] to participate in an employment act or practice that is in violation of law." Therefore, he has not stated a claim for a violation of the Whistleblower Law.

**D.   Defamation Claim**

The only moving defendants against whom plaintiff asserts a defamation claim are Parrozzo and Mayor Ragusa.[79] Accordingly,

---

[79]   *See David S. Maurer v. Town of Independence, Louisiana et al.*, No. 2:13-cv-05910, R. Doc. 1 at 45; R. Doc. 21-1 at 11.

the Court limits its analysis to those defendants.

Under Louisiana law, "[f]our elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004) (quoting *Trentecosta v. Beck*, 703 So.2d 552, 559 (La. 1997)). Defamatory words are defined as "words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule." *Id.* at 140. The issue of whether a particular communication is capable of a defamatory meaning is a legal one for the Court, "answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense." *Id.* In order to adequately plead a defamation claim under Louisiana law, a plaintiff must "specifically allege" that the defendant made a false and defamatory statement with malice. *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 664 (5th Cir. 2005); *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 292 (5th Cir. 2001); *see also Badeaux v. Sw. Computer Bureau, Inc.*, 929 So.2d 1211, 1218 (La. 2006) (plaintiff must "set forth in the [complaint] with reasonable specificity the defamatory statements

26

allegedly published by the defendant").

The only statement plaintiff specifically attributes to Parrozzo is the assertion, "All we are going to have to do is vote and he [plaintiff] is out as fire chief."[80] That is a prediction of future events, not a statement of fact. Thus, it cannot be false and therefore cannot be defamatory. *See WCP/Fern Exposition Servs., LLC v. Hall*, Civil Action No. 3:08-CV-522, 2011 WL 1157699, at *13 (W.D. Ky. Mar. 28, 2011) ("prediction about a possible future event" is not factual and hence cannot be defamatory); *Rushman v. City of Milwaukee*, 959 F. Supp. 1040, 1044 (E.D. Wis. 1997) (predictions are not defamatory); *Bebo v. Delander*, 632 N.W.2d 732, 740 (Minn. Ct. App. 2001) ("prediction of a future event" is "not a fact capable of verification" and therefore is not defamatory as a matter of law).

Plaintiff does not attribute any specific defamatory statements to Mayor Ragusa. Instead, he simply alleges that Ragusa made certain "allegations" about plaintiff in a letter to TPD2, allegations that plaintiff later "refuted."[81] Plaintiff's conclusory statements later in the complaint that these statements were "false," "made with malice," "published," and "caused plaintiff injury" are insufficient to state a claim for

---

[80]    *David S. Maurer v. Town of Independence, Louisiana et al.*, No. 2:13-cv-05910, R. Doc. 1 at at 28.

[81]    *Id.* at 21, 23.

27

defamation. *See Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) (dismissing conclusory allegation that defendants "'in bad faith maligned, negligently misrepresented, defamed, defrauded and slandered plaintiff extremely and outrageously'" because "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" under Rule 8 (quoting *Iqbal*, 556 U.S. at 678) (alteration in original)); *Cooper v. Paragon Sys., Inc.*, Civil Action No. 5:08-cv-169, 2008 WL 4187942, at *4 (S.D. Miss. Sep. 5, 2008) (dismissing defamation claim because "plaintiff fail[ed] to set forth information in her complaint regarding the substance or nature of any alleged statement or how it was defamatory"). Under Rule 8, a plaintiff cannot merely recite the elements of a cause of action; instead, he must plead *facts* plausibly suggesting an entitlement to relief. *Iqbal*, 556 U.S. at 678. Here, plaintiff has failed to do so.

## IV.  LEAVE TO AMEND

Courts should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013); *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985). The Court thus grants plaintiff's request for an opportunity to amend his complaint.

## V.  CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motions and dismisses plaintiffs' claims against IVFD, Jeremy Baham, Eric Anthony, Jonathan Tallo, Christopher McKinney, Anthony Parrozzo, Michael Ragusa, and Independence without prejudice. Plaintiff will be allowed fourteen (14) days from the date of this order to amend their complaint. Failure to timely amend the complaint will result in dismissal with prejudice.


New Orleans, Louisiana, this 28th day of February, 2014.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE