UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID S. MAURER                        CIVIL ACTION

VERSUS                                 NO: 13-5450

TOWN OF INDEPENDENCE,                  SECTION: R
LOUISIANA, *ET AL.*

### AMENDED ORDER AND REASONS

This Court VACATES its Order and Reasons issued September 5, 2014[1] and replaces it with this Amended Order and Reasons, to correct the final paragraph of the order.

Two sets of defendants move to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Defendants Tangipahoa Parish Rural Fire Protection District Number 2 (TPD2), Nicholas Muscarello, Carlo Bruno, and Dennis Crocker (collectively the "Fire District Defendants") filed the first

---

[1]     R. Doc. 72.

[2]     Two additional sets of defendants have also moved to dismiss plaintiff's amended complaint. *See* R. Docs. 43 and 44. The Court will address those motions in a separate order.

motion;[3] defendant Tangipahoa Parish filed the second.[4] For the following reasons, the Court GRANTS the motions.

## I.    FACTUAL BACKGROUND

Plaintiff David Maurer is a former employee of the Independence Volunteer Fire Department. After he was terminated from his position as fire chief of the department, he brought section 1983 claims for procedural due process violations and state law claims for violations of Louisiana's "Whistleblower Law" and defamation of character against thirteen defendants.[5] Town of Independence (Independence), Tangipahoa Rural Fire Protection District Number 2 (TPD2), and Tangipahoa Parish Government (TPG) are political subdivisions of the state of Louisiana.[6] Michael

---

[3]    R. Doc. 47. The Fire District Defendants filed a motion to dismiss plaintiff's initial complaint on February 28, 2014, and set it for submission on March 26, 2014. R. Doc. 35. On March 18, 2014, plaintiff filed an amended complaint, see R. Doc. 39, and the Fire District Defendants thereafter filed a motion to dismiss the amended complaint. The Court will consider the arguments in both of the Fire District Defendants' motions to dismiss in deciding whether the amended complaint states a claim upon which relief can be granted against the Fire District Defendants.

[4]    R. Doc. 61.

[5]    R. Doc. 39. Tangipahoa Parish's and Fire Distric Defendants' motions to dismiss are addressed to the amended complaint in member case No. 13-5910, which was consolidated with case No. 13-5450 on October 2, 2013. See R. Doc. 7. The plaintiff's allegations in the lead case, No. 13-5450, are not relevant to the motion and will not be considered here.

[6]    R. Doc. 39 at 3-4.

Ragusa is the mayor of Independence.[7] Nicholas Muscarello and Carlo Bruno are members of the Tangipahoa Parish Council and members of the Board of Commissioners of TPD2, and defendant Dennis Crocker is the administrator of TPD2.[8] Independence Volunteer Fire Department is a domestic corporation that provides fire protection services to Independence and the surrounding area.[9] Jeremy Baham, Eric Anthony, Jonathan Tallo, Christopher McKinney, and Anthony Parrozzo are members of the board of directors of IVFD.[10] Plaintiff has sued all of the individual defendants in their individual and official capacities.

Plaintiff's complaint alleges the following facts.

A.   **Plaintiff's Appointment and Early Tenure as Fire Chief**

Plaintiff began working as a firefighter for the Independence Fire Department (IFD) in October 2009.[11] At the time, IFD and IVFD jointly provided fire protection services for Independence and the surrounding area.[12] In September 2012, Independence and TPD2 decided

---

[7]    *Id.* at 2.

[8]    *Id.* at 2-3.

[9]    *Id.* at 5-6.

[10]    *Id.* at 3.

[11]    *Id.* at 5.

[12]    *Id.* A volunteer fire department is generally defined as a fire department whose firefighting personnel serve on a volunteer basis. *See, e.g.*, 15 U.S.C. § 2229(a)(9).

3

to close IFD and hire IVFD as the exclusive provider of fire protection services for the area.[13] The firefighters employed by IFD were to be terminated and then rehired to work for IVFD.[14]

After the municipality made this decision, Dennis Crocker, the fire chief of IFD, became the administrator of TPD2.[15] Crocker asked plaintiff to be the fire chief of IVFD under the "new regime," and plaintiff accepted.[16] In December, plaintiff was officially confirmed as fire chief of Independence and of IVFD.[17]

Plaintiff's tenure as fire chief was marked by numerous clashes with Crocker. One involved plaintiff's decision, made soon after his appointment, to "change[] the way fire trucks responded to emergency calls."[18] Previously, all personnel on duty and all available fire vehicles responded to every call as a matter of course. Plaintiff instituted a more flexible system, "authoriz[ing] the officer in charge and on duty to make the decision as to the appropriate response to each call."[19] Crocker did not agree with plaintiff's decision, and, according to the complaint, he

---

[13]    *Id.* at 6.

[14]    *Id.*

[15]    *Id.*

[16]    *Id.* at 6-7.

[17]    *Id.* at 8.

[18]    *Id.* at 9.

[19]    *Id.*

"continued to act as if he had supervisory authority over the plaintiff," "frequently [coming] to the station and often call[ing] plaintiff telling plaintiff how to do his job."[20]

On January 20, plaintiff learned that Crocker had been "undermining plaintiff as Fire Chief" in conversations with other firefighters.[21] Plaintiff complained about Crocker's behavior to Mayor Ragusa and Nicholas Muscarello, both of whom stated that Crocker should not have been "interfering" with the management of IVFD.[22] According to the complaint, however, Crocker's "interference" did not abate.[23]

Crocker and plaintiff also butted heads when plaintiff discovered in January 2013 that Crocker had failed to pay several of the fire department's bills during the last portion of his tenure as fire chief.[24] Several months later, a newspaper ran a story about IVFD's failure to pay its bills.[25] Crocker asked plaintiff why he had contacted the media, but plaintiff responded "that he was responding to a press inquiry and that he was not

---

[20]    *Id.* at 10.

[21]    *Id.* at 13.

[22]    *Id.*

[23]    *Id.* at 14.

[24]    *Id.* at 12.

[25]    *Id.* at 17.

going to lie to cover up what was being done to IVFD."[26]

Yet another conflict arose between Crocker and plaintiff over plaintiff's refusal to hire Crocker's son, Andrew, at IVFD.[27] Plaintiff learned from the Board of Ethics that Andrew could not work for IVFD because of his relationship with Crocker, the administrator of TPD2.[28] Crocker continued to "lobb[y] plaintiff to employ Andrew" even after learning of the Board's decision.[29]

Finally, Crocker and plaintiff clashed over plaintiff's part-time employment with Hammond Rural Fire Department. In late January, Crocker informed plaintiff that a complaint had been lodged against him.[30] The complaint apparently concerned plaintiff's employment with Hammond. Plaintiff alleges that "Crocker told plaintiff that he could not work part time for Hammond . . . and also be employed as chief of IVFD."[31] Plaintiff told Crocker that he would not make a decision on the matter without speaking to an attorney, and Crocker later told plaintiff "that everything had been worked out."[32]

---

[26]    *Id.*

[27]    *Id.* at 16.

[28]    *Id.*

[29]    *Id.* at 17.

[30]    *Id.* at 14.

[31]    *Id.* at 15.

[32]    *Id.*

Plaintiff also encountered conflicts with other town officials that stemmed from a dispute about "compensatory time" that plaintiff believed was owed to several firefighters. In January 2013, after plaintiff had officially assumed his duties as fire chief, he approached Mayor Ragusa about "unpaid compensatory time owed to the firefighters who were formerly employed by the Town of Independence."[33] Ragusa originally promised to "take care of it," but the issue ultimately went unresolved.[34] In April 2013, Ragusa definitively told plaintiff that the town was not going to pay the compensatory time.[35]

In May 2013, plaintiff decided not to invite Ragusa or the Independence Aldermen to IVFD's annual "safety meeting/crawfish boil" because the firefighters were "upset with the Town officials about the compensatory time issue."[36] Ragusa and the Aldermen were not pleased with the snub. Ragusa intimated that plaintiff's hiring as Fire Chief had created a significant amount of hostility between IVFD and Independence, and one Alderman stated that if the town intentionally failed to "make the next payment," it could select a new fire chief.[37]

---

[33]   *Id.* at 10.

[34]   *Id.* at 10–12.

[35]   *Id.* at 18.

[36]   *Id.*

[37]   *Id.* at 19.

**B.   TPD2's Investigation and Plaintiff's Subsequent Termination**

In June 2013, Crocker and Ragusa met in Ragusa's office.[38] At this meeting, Crocker allegedly "told Ragusa that he needed Ragusa's help to get rid of the plaintiff."[39] On June 25, 2013, Ragusa sent a letter to TPD2 stating that Independence intended to withhold money from IVFD because plaintiff had not been adequately fulfilling his duties as fire chief.[40] Specifically, Ragusa claimed, among other things, that plaintiff had failed to respond to calls in the Independence area, caused several firefighters to quit IVFD, and improperly deposited a $2,500 check that belonged to Independence in the IVFD account.[41]

On July 1, 2013, Bruno and Crocker advised plaintiff of Ragusa's letter and told him that TPD2 would investigate Ragusa's allegations.[42] Bruno stated that TPD2 would inform plaintiff by letter before the investigation began, but upon plaintiff's return to the fire station, he discovered Crocker there, pulling fire reports for the investigation.[43] Thus learning that the

---

[38]    *Id.* at 21.

[39]    *Id.*

[40]    *Id.* at 23-24.

[41]    *Id.*

[42]    *Id.* at 24-25.

[43]    *Id.* at 25-26.

investigation had commenced, plaintiff wrote to TPD2 "refut[ing] every allegation contained in Ragusa's letter."[44] The complaint specifically rebuts Ragusa's last allegation concerning the $2,500 check. According to plaintiff, that check was written by Austin Davis, a former employee of IVFD.[45] IVFD had paid $2,500 for Davis to attend the LSU Firefighting School, conditional on Davis remaining employed with IVFD for at least two years.[46] Davis left before the two-year period was up and accordingly refunded the tuition.[47] Crocker, who was still the IVFD fire chief at the time, had the money deposited in the IVFD account, stating "that the funds were originally budgeted for the fire department and if we give it back to the town we will never see it again."[48] Plaintiff alleges that he told Ragusa about the check before the investigation began and promised to repay the money to the town.[49]

Crocker allegedly "made negative comments about plaintiff for others to hear" during the time he spent at the station conducting his investigation.[50] Upon hearing of this, plaintiff complained to

---

[44] *Id.* at 26; R. Doc. 39-1 (copy of plaintiff's letter).

[45] R. Doc. 39 at 29.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.* at 22.

[50] *Id.* at 26-27.

Muscarello and stated that he was concerned that Crocker could not be "fair and impartial" because plaintiff had refused to hire Crocker's son at IVFD.[51] Muscarello responded that TPD2 would address plaintiff's concerns at the next board meeting, but this solution was unsatisfactory to plaintiff, because the investigation was set to conclude before that meeting occurred.[52]

Several days into the investigation, Crocker came to the fire station unannounced and conducted an interview with plaintiff.[53] Crocker did not read plaintiff Louisiana's Firefighter Bill of Rights before the interview, nor did he record the conversation.[54] During the interview, Crocker asked plaintiff about the allegations in Ragusa's letter, and plaintiff "presented Crocker with documentation refuting" each of the allegations.[55] In response to Crocker's questioning about the $2,500 deposit, plaintiff showed Crocker documents proving that Crocker was the fire chief at the time the deposit was made.[56] Crocker, however, "refused to take the documents with him."[57]

---

[51] *Id.* at 27.

[52] *Id.*

[53] *Id.* at 28.

[54] *Id.*

[55] *Id.*

[56] *Id.* at 29.

[57] *Id.* at 30.

Plaintiff alleges that "[o]ther events occurred during Crocker's investigation which indicated that [it] was not being conducted in a fair and impartial manner and that some of the information being provided to Crocker was false."[58] Specifically, plaintiff describes an instance in which Anthony told Crocker that plaintiff had ignored a request to come to the scene of an accident.[59] According to plaintiff, Anthony's account was inaccurate: in fact, Anthony had explicitly told plaintiff that he was not needed on the scene.[60]

On July 18, 2013, a TPD2 committee met with Independence officials to discuss the investigation of plaintiff.[61] Five days after that meeting, Anthony Parrozzo stated, "All we are going to have to do is vote and he [plaintiff] is out as fire chief."[62] According to the complaint, Parrozzo had designs on the office of fire chief and wanted to use his close friendship with Crocker in order to replace plaintiff in that position.[63]

On July 25, the IVFD held a board meeting, and after the meeting the Board told plaintiff that he would be placed on

---

[58]   *Id.*

[59]   *Id.* at 30-31.

[60]   *Id.* at 31.

[61]   *Id.* at 32.

[62]   *Id.*

[63]   *Id.* at 33.

administrative leave, with pay, pending the conclusion of the investigation.[64] Jeremy Baham, one of the members of the Board, told plaintiff that Bruno had explained to the Board that Mayor Ragusa planned to withdraw funding from IVFD and dissolve the corporation if plaintiff remained fire chief.[65] Bruno also told the Board that plaintiff had been approved by TPD2 as the interim chief of IVFD, not the permanent chief.[66]

Plaintiff complained to Muscarello that he had never had an opportunity to defend himself against Ragusa's allegations before being placed on leave, but Muscarello declined to give plaintiff any details about the ongoing investigation.[67] On July 29, following a meeting of the IVFD Board, plaintiff was terminated from his position as fire chief.[68] Ragusa allegedly made several derogatory statements about plaintiff to the media after plaintiff's termination.[69] For example, Ragusa stated that "what [plaintiff] was doing was no way to run the department" and that plaintiff had lied about the reason why three firefighters left IVFD.[70]

---

[64] *Id.* at 33–34.

[65] *Id.* at 34.

[66] *Id.*

[67] *Id.* at 35.

[68] *Id.* at 35–36.

[69] *Id.* at 39–41.

[70] *Id.*

According to the complaint, the IVFD Board never produced a written report of the results of the investigation that led to plaintiff's termination.[71] Two board members who were not at the July 29 meeting requested such a report from the rest of the Board, but they did not receive one.[72] On July 31, plaintiff's attorney wrote a letter to officials from TPD2 and Independence to request a meeting.[73] In that letter, plaintiff's attorney claimed "that the adverse action being taken by TPD2, . . . Independence, and IVFD was motivated by the personal animosity of Crocker and Ragusa."[74] Independence did not respond to the letter,[75] but plaintiff and his attorney eventually met with an attorney for TPD2, Clifton Speed, on September 4.[76]

At that meeting, Speed stated that there was no report from the investigation, and that Ragusa's allegations were not the reason for plaintiff's termination.[77] Instead, plaintiff had been terminated because of three allegations, which the complaint terms

---

[71]    *Id.* at 36.

[72]    *Id.*

[73]    *Id.* at 37; *see also* R. Doc. 39-2 (copy of plaintiff's letter requesting a meeting).

[74]    R. Doc. 39 at 37-38.

[75]    *Id.* at 38.

[76]    *Id.* at 42.

[77]    *Id.*

the "Speed allegations": (1) "plaintiff was only sending two firefighters to fire calls;" (2) "IVFD was never short of money; Crocker told TPD2 that IVFD had over $500,000.00 available;" and (3) "two fire engines were broken down for an extended period of time."[78] Plaintiff responded that these allegations were false.[79] His complaint explains in some detail precisely why he believes the allegations are untrue.[80]

Plaintiff also alleges that Parrozzo made negative comments about him after his termination. Specifically, he alleges that Parrozzo "made the statement to others in the community that Parrozzo had denied plaintiff's unemployment claim,"[81] that Parrozzo told the state Board of Ethics that plaintiff had misled them about the situation with Crocker's son, and that Parrozzo also stated that plaintiff had "misappropriated" the $2,500 check from Austin Davis.[82] Parrozzo was also allegedly quoted in the newspaper as saying that "the list of problems that Ragusa and the Board of Aldermen had with the plaintiff" were being corrected.[83]

---

[78]    *Id.* at 42-43.

[79]    *Id.* at 43-44.

[80]    *Id.*

[81]    *Id.* at 42.

[82]    *Id.* at 45.

[83]    *Id.* at 42.

## II.  PROCEDURAL HISTORY

Plaintiff's original complaint asserted four causes of action based on the foregoing events.[84] First, he claimed that each of the defendants deprived him of his employment without due process of law because the investigation of plaintiff violated the Louisiana Firefighters' Bill Of Rights, La. Rev. Stat. § 33:2181, and because TPD2, Independence, and IVFD violated certain contractual provisions that created a third-party benefit for firefighters.[85] Second, plaintiff alleged a section 1983 "stigma-plus-infringement" claim against all defendants.[86] Third, plaintiff claimed that Ragusa and Independence violated Louisiana's "Whistleblower Law," La. Rev. Stat. § 23:967.[87] Fourth, plaintiff alleged that Ragusa, Muscarello, Bruno, Parrozzo, and Crocker defamed him.[88]

On February 28, 2014, the Court granted two motions to dismiss, one filed by defendants IVFD, Baham, Anthony, Tallo, McKinney, and Parrozzo (the "IVFD defendants"),[89] and one filed by

---

[84]  *See David S. Maurer v. Town of Independence, Louisiana et al.*, No. 2:13-cv-05910, R. Doc. 1.

[85]  *Id.* at 36–42.

[86]  *Id.* at 42–44.

[87]  *Id.* at 44–45.

[88]  *Id.* at 45–46.

[89]  R. Doc. 8.

Mayor Ragusa and Independence.[90] The Court rejected plaintiff's procedural due process claim because it found that plaintiff did not have a property interest in his employment.[91] Specifically, the Court held that plaintiff was not a "fire employee" within the meaning of the Firefighter Bill of Rights[92] and that his conclusory allegations that he was the beneficiary of a stipulation *pour autri* were insufficient to survive a motion to dismiss.[93] The Court also rejected plaintiff's argument, made in his opposition to the motions to dismiss, that he was entitled to civil service protection.[94] The Court explained that volunteer fire departments are not required under the Louisiana Constitution to establish a classified civil service system.[95]

The Court dismissed plaintiff's "stigma-plus-infringement" claim against the IVFD Defendants, Ragusa, and Independence, on the grounds that plaintiff had failed to allege the necessary elements of such a claim as to those defendants.[96] The Court also dismissed

---

[90]    R. Doc. 13.

[91]    R. Doc. 34 at 15-16.

[92]    *Id.* at 16-19.

[93]    *Id.* at 19-21.

[94]    *Id.* at 21.

[95]    *Id.* (citing *Heintz v. City of Gretna*, 683 So. 2d 926, 928 (La. Ct. App. 1996)).

[96]    *Id.* at 21-24.

the whistleblower and defamation claims against the moving defendants.[97] The Court did, however, grant plaintiff's request for leave to amend his complaint.[98]

Plaintiff filed an amended complaint on March 18, 2014.[99] The amended complaint is similar to plaintiff's original complaint, but it contains more detailed factual allegations regarding the allegedly defamatory statements made by various defendants. It also explains in detail why plaintiff believes he has a property interest in his employment protected by the Due Process Clause. First, plaintiff contends that although IVFD was his nominal employer, "TPG, acting through its special district, [TPD2], [was] plaintiff's *de facto* employer."[100] He alleges that TPG, acting through TPD2, "has the right to control all of the volunteer fire departments, such as IVFD, because of its authority concerning personnel and finances."[101] He claims that as a result he "meets the definition of 'fire employee' in the Firefighter Bill of Rights because he is a person employed in the fire department of a fire protection district."[102] He also claims that TPG, through TPD2,

---

[97]     *Id.* at 25-28.

[98]     *Id.* at 28.

[99]     R. Doc. 39.

[100]    *Id.* at 49 (emphasis added).

[101]    *Id.* at 52.

[102]    *Id.* at 54.

"has" a fire district for purpose of the Firefighter Bill of Rights statute, "consist[ing] of its Administrator, Dennis Crocker, each nonprofit corporation which contracts with it for the provision of fire protection services, and all paid fire employees assigned to each non-profit corporation."[103] He also supports his due process claim with an argument that he is entitled to the protections of the Louisiana Civil Service system, again relying on his "de facto" employer argument to support his position.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009).

A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of

---

[103]    *Id.* at 55.

action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

**IV.  DISCUSSION**

**A.  Procedural Due Process Claim**

When confronted with a procedural due process claim, a court must determine, first, whether the plaintiff has a property or liberty interest that cannot be taken away without procedural protections; and second, if so, how much process is due. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))). Plaintiff contends that the Due Process Clause applies here for two reasons: first, because he had a property interest in his employment by reason of a state statute, the Louisiana Firefighter Bill of Rights; and second, because he is a classified civil service employee. The Court finds no merit in plaintiff's arguments that he has a property interest in his employment, and therefore holds that plaintiff has failed to show that he was entitled to any procedural protections before his termination.

*1.  Violation of the Firefighter Bill of Rights*

The Louisiana Firefighter Bill of Rights mandates that certain "minimum standards" apply whenever a "fire employee" is under investigation, La. Rev. Stat. § 33:2181(B), and provides that "[a]ny discipline, demotion, dismissal or adverse action of any sort taken against a fire employee without complete compliance with

20

the provisions of [the statute] is an absolute nullity[.]" La. Rev. Stat. § 33:2181(C).

As the Court held in its earlier order granting certain defendants' motions to dismiss, these provisions do not apply to plaintiff because he is not a "fire employee" within the meaning of the statute.[104] A "fire employee" is defined as "any person employed in the fire department of any municipality, parish, or fire protection district maintaining a full-time regularly paid fire department, regardless of the specific duties of such person within the fire department, and who is under investigation with a view to possible disciplinary action, demotion, or dismissal." La. Rev. Stat. § 33:2181(A)(1). In its earlier Order, the Court explained that plaintiff's complaint indicated he was employed by IVFD, a private corporation, *not* by Independence or TFD2.[105] Thus, under the plain terms of the statute, the Firefighter Bill of Rights did not apply to plaintiff.

In his amended complaint, plaintiff seeks to remedy this deficiency and bring himself within the statute's definition of a fire employee by alleging that although IVFD was his nominal employer, Tangipahoa Parish, acting "through its special district TFD2," was his *de facto* employer as a result of the significant degree of control it exercised over the funding and personnel

---

[104]    R. Doc. 34 at 16.

[105]    *See id.*

21

decisions of IVFD. Plaintiff cannot finesse the clear language of the statute in this fashion.

When a federal court interprets a Louisiana statute, it must do so according to the principles of interpretation followed by Louisiana courts. *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991). In Louisiana, the sources of law are legislation and custom. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004). These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id*. (quoting La. Civ. Code art. 1). In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Id*. (quoting *Prytania Park Hotel, Ltd. v. General Star Indem. Co.*, 179 F.3d 169, 174 (5th Cir. 1999)). In addition, in Louisiana, "Laws on the same subject matter must be interpreted in reference to each other." La. Civ. Code art. 13.

If the Louisiana Supreme Court has not ruled on an issue, then this Court must make an "*Erie* guess" and "determine as best it can" what the Louisiana Supreme Court would decide. *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir. 1999). To make an "*Erie* guess" on an issue of Louisiana law, the Court must "employ the appropriate

Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Shaw Constructors*, 395 F.3d at 546 (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

Therefore, the Court begins its analysis with the language of the statute. The Firefighter Bill of Rights provides a precise definition of "fire employee." When, as here, the statute specifically defines the employer-employee relationship, the statute's definition governs. *See Dejoie v. Medley*, 9 So. 3d 826, 829-30 (La. 2009). Allowing an alternative definition, such as plaintiff's proposed *de facto* employer formula, to compete with the statutory definition would defeat the purpose of privileging the statutory text in the first place.

To meet the statute's definition of a "fire employee," two factors must be met. A person must be (1) "employed in the fire department of [a] municipality, parish, or fire protection district," and (2) the employing municipality, parish or fire protection district must "maintain[] a full-time regularly paid fire department." La. Rev Stat. 33:2181(A)(1). The first element, importantly, does *not* refer to employees of private nonprofit corporations. Therefore, under the plain terms of the statute, the Firefighter Bill of Rights does not apply to plaintiff.

The Court's conclusion that the Firefighter Bill of Rights does not apply to plaintiff is buttressed by comparing La. Rev

Stat. 33:2181 with La. Rev. Stat. §§ 33:1991 and 33:2002, which are also found in the Part of the Louisiana Revised Statutes entitled "Fire Department." Section 33:1991 contains definitions for the Subpart on minimum wages and maximum hours for firefighters and provides as follows:

> The word "fireman," as used in this Subpart includes all persons employed or engaged full-time by municipalities or municipal fire departments, parishes or parish fire departments, or fire protection districts for firefighting or fire prevention duties and services, *as well as employees of nonprofit corporations under contract with a fire protection district or other political subdivision to provide such services*, including operators of the fire-alarm system when such operators are members of the regularly constituted fire department. The word "fireman" does not include carpenters, storekeepers, machinists, clerks, building hazard and similar inspectors, physicians, or other non-firefighting employees detailed for such special duties, nor does the word "fireman," except as otherwise provided in this Subsection, include employees of privately owned or operated firefighting or fire prevention services.

La. Rev. Stat. § 33:1991(A)(1) (emphasis added). Thus, the Louisiana legislature specifically included firefighters employed by nonprofit corporations that contract with political subdivisions to provide fire protection services in the definition of "fireman" in section 33:1991, but it did not specifically include such firefighters in the definition of "fire employee" in the Firefighter Bill of Rights.

Similarly, section 33:2002, which governs supplemental pay for employees of fire departments, specifies in four separate places that it applies to

24

> any municipality, parish, fire protection district, or
> other political subdivision maintaining a fire
> department, or by the Chitimacha Tribe of Louisiana or
> the Coushatta Tribe of Louisiana, hereinafter referred to
> as "tribe", or by *any nonprofit corporation contracting
> with any such political subdivision to provide fire
> protection services*.

La. Rev. Stat. § 33:2002 (emphasis added). Thus, the supplemental

pay statute, unlike La. Rev. Stat. § 33:2181, makes clear that it

is intended to apply to nonprofit corporations.

Comparing these two statutes with the text of La. Rev. Stat.

33:2181 demonstrates that the Louisiana legislature specifically

included "employees of nonprofit corporations" and "nonprofit

corporations" in those statutes that it intended to be applicable

to nonprofit corporations. It follows that had the legislature

intended for the Firefighter Bill of Rights to be applicable to

employees of nonprofit corporations contracting to provide fire

protection services, it would have specifically included them in

the definition of "fire employee" provided in the statute.

*West Virginia University Hospitals, Inc. v. Casey*, 499 U.S.

83 (1991), is instructive in this regard. There, the Supreme

Court held that the term "attorney's fees" in the fee-shifting

provision of 42 U.S.C. § 1988 did not include expert witness fees

because many other fee-shifting statutes explicitly allowed for

shifting of both attorney's fees *and* expert witness fees. *Id.* at

88-92. The Court explained that "this statutory usage shows

beyond question that attorney's fees and expert fees are distinct

items of expense. If . . . the one includes the other, dozens of statutes referring to the two separately becomes an inexplicable exercise in redundancy." *Id*. at 92. So it is here as well. If a private corporation such as IVFD were considered to be the "fire department of a[] municipality, parish, or fire protection district" within the meaning of section 33:2181, there would have been no need for the Louisiana legislature to refer separately to "municipal fire departments, parishes or parish fire departments, or fire protection districts," and to "nonprofit corporations under contract with a fire protection district or other political subdivision to provide [fire protection] services" in section 33:1991. Nor would there have been need for it to refer separately to "any municipality, parish, fire protection district, or other political subdivision maintaining a fire department" and "any nonprofit corporation contracting with any such political subdivision to provide fire protection services" in section 33:2002. *Cf. Casey*, 499 U.S. at 101 (courts should not "treat alike subjects that different Congresses have chosen to treat differently"); *Pa. Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 562 (1990) (expressing "a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment"); La. Civ. Code art. 13 ("Laws on the same subject matter must be interpreted in reference to each other.").

Moreover, in making an *Erie* guess in the absence of a ruling from the state's highest court, federal courts may look to the decisions of intermediate appellate state courts for guidance. *See Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000) (citing *Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 354 (5th Cir. 1998)). Louisiana's intermediate appellate court decisions provide "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (citing *Labiche v. Legal Sec. Life Ins. Co.*, 31 F.3d 350, 351 (5th Cir. 1994)). At present, only the Louisiana Fifth Circuit Court of Appeal has decided the issue of whether employees of non-profit corporations under contract with a fire protection district to provide fire protection services are "fire employees" within the meaning of the Firefighter Bill of Rights. That court held that they were not, employing a similar statutory analysis to the Court here. *See Marks v. Third Dist. Volunteer Fire Dep't*, 131 So. 3d 1099 (La. Ct. App. 2013).

In *Marks*, the plaintiff was employed by the Third District Volunteer Fire Department, a Louisiana non-profit corporation. 131 So. 3d at 1100. The Third District was under contract with Fire Protection District No. 3 for Jefferson Parish to provide fire protection services for certain areas in the East Bank of

Jefferson Parish. *Id.* The plaintiff alleged that his termination by the Third District was illegal because the Third District failed to comply with the Louisiana Firefighter Bill of Rights. *Id.*

The trial court ruled that the plaintiff had no cause of action because he was not a "fire employee" within the meaning of the statute as a matter of law. *Id.* The Louisiana Court of Appeal affirmed. The court held that the plaintiff did not meet the definition of "fire employee" for two reasons. First, unlike the plaintiff here, the plaintiff in *Marks* did not allege that he was an employee -- *de facto* or otherwise -- in the fire department of a political subdivision. *Id.* Second, the court held that by contracting with a volunteer fire department in order to obtain fire protection services, Fire Protection District No. 3 did not "maintain" a full-time regularly paid fire department. *Id.* That the Louisiana "legislature specifically referenced 'employees of non-profit corporations under contract with a fire protection district' in those statutes that it intended to be applicable to non-profit corporations," but had not mentioned such employees in the Firefighter Bill of Rights, buttressed the Court of Appeal's conclusion. *Id.* at 1103 (citing La. Rev. Stat. §§ 33:1991, 33:2002). "Had the legislature intended for La. Rev. Stat. § 33:2181 to be applicable to employees of a non-profit organization contracting to provide fire protection services,"

the court explained, "it would have specifically included those persons in the statute." *Id.*

Citing principles of Louisiana statutory construction, the Court of Appeal limited its analysis to the language of the statute and decided the issue as a matter of law. *See Marks*, 131 So. 3d at 1102 (citing La. Civ. Code art. 9) ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."). It rejected the argument, made by Judge Johnson in dissent, that "whether FPD No. 3 'maintains' a full-time regularly paid fire department w[ould] depend on the language of the contract between FPD No. 3 and the Third District, as well as consideration of how the fire department is organized, funded, and employed." *Id.* at 1104 (Johnson, J., dissenting).

Applying the same principles of construction here, the Court concludes that the text of La. Rev. Stat. § 33:2181 is clear and unambiguous, and its inapplicability to plaintiff may be determined as a matter of law. In addition to the problems already identified under the first element of La. Rev. Stat. § 33:2181's definition of "fire employee," which requires plaintiff to be "employed" by a "parish, or fire protection district," plaintiff faces similarly insurmountable problems in connection with the definition's second element. The second element

specifies that the statute applies only to employees of
municipalities, parishes, and fire protection districts
"maintaining a full-time regularly paid fire department."
Following the logic of the *Marks* court, the Court rejects
plaintiff's suggestion that Tangipahoa Parish, through its
special district TFD2, maintains a fire department within the
meaning of the Firefighter Bill of Rights "consist[ing] of its
Administrator, Dennis Crocker, each nonprofit corporation which
contracts with it for the provision of fire protection services,
and all paid fire employees assigned to each non-profit
corporation."[106] If the Louisiana legislature had intended to make
it possible to "maintain" a fire department for purposes of La.
Rev. Stat. §  33:2181 by means of contracting with a non-profit
corporation for the provision of fire protection services, it
would have said so. It did not. Therefore, the Court need look no
further than the text of the statute itself to conclude that the
protections of the Louisiana Firefighter Bill of Rights do not
apply to plaintiff.

    Finally, even if the Court did look beyond the statutory
text and examine plaintiff's *de facto* employer argument, that
argument fails on the facts. The common law test for an employer-
employee relationship under Louisiana law "relates to the right
of control." *Id*. In Louisiana, the right to control is evidenced

---

[106]    *Id*. at 55.

by four primary factors: (1) selection and engagement, (2) payment of wages, (3) power of dismissal, and (4) power of control. *See Harrington v. Hebert*, 789 So. 2d 649, 653 (citing *Boswell v. Kurthwood Manor Nursing Home*, 647 So. 2d 630, 631 (La. Ct. App. 1994)) (worker's compensation); *see also Berthelot v. Stallworth*, 884 So. 2d 648, 654 (La. Ct. App. 2004) (vicarious liability). None of these factors alone is determinative. *Harrington*, 789 So. 2d at 653. The single most important factor, however, is the fourth factor: the right of the employer to control the work of the employee. *See Roberts v. State, Through Louisiana Health & Human Res. Admin.*, 404 So. 2d 1221, 1225 (La. 1981). Plaintiff's support for this critical factor consists primarily of a bare recitation Louisiana's test: he alleges that the Parish, acting through its special district TFD2, "has the right of control and supervision over its employees."[107] He alleges no specific facts, however, to illustrate what type of control, if any, the Parish or TFD2 exercised over the day-to-day operations of IVFD or the work of IVFD employees. Moreover, the contract in effect between the Town of Independence, TFD2, and IVFD at the time of the events in question explicitly provides that TPD2 was *not* to have direct day-to-day supervisory control

---

[107]    *Id.*

of IVFD.[108] Specifically, the contract provides:

> [T]he fire district does not have any direct supervision of the Independence Volunteer Fire Dept., Inc.'s firefighters, emergency services providers or officers and as such no member of the Board of Commissioners or the Tangipahoa Parish Rural Fire Protection District Number Two nor any employee, agent or representative thereof shall direct orders to the Independence Volunteer Fire Dept., Inc.'s employees, firefighters, emergency service providers or officers on issues of the day to day operations of the said volunteer fire department.[109]

Nevertheless, plaintiff suggests that TPD2's authority over IVFD's finances support a finding of control. Specifically, he alleges that all IVFD expenditures must be "reviewed and approved and processed for payment by TFD2."[110] Plaintiff's allegations about processing of payments are equally consistent with the way bills generated by any independent contractor might be processed. Thus, they do not support an inference that TFD2 exercised the

---

[108]    In ruling on a Rule 12(b)(6) motion to dismiss, "courts must consider the complaint in its entirety," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and generally should not go beyond the pleadings, limiting their inquiry to the facts stated in the complaint. *See* Fed.R.Civ.P. 12(d); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Nevertheless, to evaluate a Rule 12(b)(6) motion to dismiss, a court may also consider documents incorporated into the complaint by reference, such as the contract in question here. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[109]    Cooperative Endeavor Agreement By and Between the Independence Volunteer Fire Dept., Inc., the Tangipahoa Parish Rural Fire Protection District Number Two and the Town of Independence, adopted and executed October 29, 2012, effective January 1, 2013 through December 31, 2014, at 3.

[110]    *Id.* at 52.

type of supervisory, day-to-day control over the activities of IVFD necessary to satisfy the right of control test. Accordingly, under the facts alleged in plaintiff's amended complaint and apparent from the clear terms of the contract between TFD2 and IVFD, TFD2 was not plaintiff's *de facto* employer.

## 2. *Civil Service Protection*

Plaintiff also contends that he is entitled to the protections of the Louisiana Civil Service system, again relying on his assertion that Tangipahoa Parish was his *de facto* employer. For the reasons discussed above, this argument fails.

In addition, plaintiff does not qualify for the protections of the Louisiana civil service system as a matter of law. The Louisiana Constitution provides that all municipalities and fire protection districts operating a "regularly paid fire department" must establish a classified civil service system. La. Const. art. 10 § 16. In *Heintz v. City of Gretna*, the Louisiana Court of Appeal held that this provision does not require volunteer fire departments that contract with municipalities to provide fire protection services to establish a classified civil service system. 683 So. 2d at 928. The court reasoned that "[v]olunteer fire departments "are 'operated' by their membership, and not by the municipality . . . and therefore the . . . provisions for civil service are inapplicable." *Id.* In *Marks*, discussed above, the court treated *Heintz*'s holding as a purely legal one -- that

33

is, as independent of the particular factual circumstances surrounding the relationship among the government entity, the volunteer fire department, and the plaintiff. *See Marks*, 131 So. 3d at 1102 (stating without qualification that "[i]n *Heintz* . . . . [t]his court found that a municipality that contracts with a non-profit corporation to provide fire protection does not operate a 'regularly paid fire department'").

Here, plaintiff alleges that he was employed by IVFD -- not by TPD2. Thus, under the reasoning of *Heintz* and *Marks*, he cannot assert a procedural due process claim based on an entitlement to civil service protection.

## B.   "Stigma-Plus-Infringement" Claim

Plaintiff does not assert a stigma-plus-infringement claim against Tangipahoa Parish. Accordingly, the Court limits its analysis to the Fire District Defendants.

If a government employee is "discharged in a manner that creates a false and defamatory impression about him and forecloses him from other employment opportunities," the employee has a procedural due process right to "notice and an opportunity to clear his name." *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (quoting *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981)). A plaintiff alleging a violation of this procedural right must prove seven elements in order to make out a "stigma-plus-

infringement" claim:

> (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided with notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.

*Id.* (citing *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000)).

Even assuming that plaintiff qualifies as a public employee for purposes of this analysis, plaintiff has failed to plead a stigma-plus-infringement claim against the Fire District Defendants. First, plaintiff has not plausibly alleged that any of the Fire District Defendants made "stigmatizing charges" against him in connection with his termination. Plaintiff does allege generally that Crocker "undermin[ed]" him as fire chief,[111] and "made negative comments about plaintiff for others to hear,"[112] and that "Crocker told Ragusa that he needed Ragusa's help to get rid of the plaintiff."[113] Plaintiff also alleges that Bruno told IVFD Board members that Ragusa would pull funding from IVFD and dissolve the corporation if plaintiff remained fire chief,[114] and that plaintiff had been approved by TPD2 as the interim chief of IVFD,

---

[111]    R. Doc. 39 at 13.

[112]    *Id.* at 27.

[113]    *Id.* at 21.

[114]    *Id.* at 34.

not the permanent chief.[115] But none of these alleged statements qualify as "stigmatizing." To be stigmatizing, a statement must be a false factual representation. *Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995). Moreover, it must be more than merely adverse; "it must be such as would give rise to 'a badge of infamy, public scorn or the like,'" *id.* (quoting *Wells v. Hico ISD*, 736 F.2d 243, 256 & n.16 (5th Cir. 1984)), and foreclose the employee from other employment opportunities, *see White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981) (damage to reputation alone is insufficient to create a stigma-plus-infringement claim without stigmatization sufficient to foreclose future employment opportunities). "Courts have routinely held that 'merely conclusory allegations that Plaintiff was stigmatized, that her reputation was substantially damaged and that she lost professional standing are insufficient without factual support to allege a plausible stigma-plus claim.'" *Miley v. Housing Auth. of City of Bridgeport*, 926 F. Supp. 2d 420, 432-33 (D. Conn. 2013) (collecting cases). Plaintiff has not pled specific facts plausibly suggesting that the foregoing comments were false and or that they exposed plaintiff to public scorn or foreclosed his opportunities for future employment.

Second, plaintiff does not allege that the Fire District Defendants denied him a hearing. To the contrary, after plaintiff requested a meeting with TPD2, TPD2's attorney met with plaintiff

---

[115]    *Id.*

36

and his attorney "for a discussion of the situation."[116] This fact negates an essential element of a stigma-plus-infringement claim. *See Hernandez v. Kingsville ISD*, Civil Action No. 2:13-CV-54, 2013 WL 5774864, at *14 (S.D. Tex. Oct. 24, 2013).

## C.    Defamation Claim

Plaintiff does not assert a defamation claim against Tangipahoa Parish. Accordingly, the Court limits its analysis to the Fire District Defendants.

None of the comments that the complaint attributes to the Fire District Defendants are capable of defamatory meaning. As the Court explained at length in its earlier order, a plaintiff must "specifically allege" that the defendant made a false and defamatory statement with malice in order to adequately plead a defamation claim under Louisiana law.[117] Plaintiff's overly general, conclusory allegations that Crocker made "negative" comments about him are insufficient. *See Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) (dismissing conclusory allegation that defendants "'in bad faith maligned, negligently misrepresented, defamed, defrauded and slandered plaintiff extremely and outrageously'" because "'[t]hreadbare recitals of the

---

[116]    *Id.* at 42.

[117]    R. Doc. 34 at 26-27 (citing *Lamar Adver. Co. v. Cont'l Cas. Co.*, 396 F.3d 654, 664 (5th Cir. 2005); *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 292 (5th Cir. 2001); *Badeaux v. Sw. Computer Bureau, Inc.*, 929 So.2d 1211, 1218 (La. 2006)).

elements of a cause of action, supported by mere conclusory statements, do not suffice'" under Rule 8 (quoting *Iqbal*, 556 U.S. at 678) (alteration in original)); *Cooper v. Paragon Sys., Inc.*, Civil Action No. 5:08-cv-169, 2008 WL 4187942, at *4 (S.D. Miss. Sep. 5, 2008) (dismissing defamation claim because "plaintiff fail[ed] to set forth information in her complaint regarding the substance or nature of any alleged statement or how it was defamatory").

Bruno's statement to the IVFD Board members that Ragusa would pull funding from IVFD and dissolve the corporation if plaintiff remained fire chief is a prediction of future events. A prediction cannot be false and therefore cannot be defamatory. *See WCP/Fern Exposition Servs., LLC v. Hall*, Civil Action No. 3:08-CV-522, 2011 WL 1157699, at *13 (W.D. Ky. Mar. 28, 2011) ("prediction about a possible future event" is not factual and hence cannot be defamatory); *Rushman v. City of Milwaukee*, 959 F. Supp. 1040, 1044 (E.D. Wis. 1997) (predictions are not defamatory); *Bebo v. Delander*, 632 N.W.2d 732, 740 (Minn. Ct. App. 2001) ("prediction of a future event" is "not a fact capable of verification" and therefore is not defamatory as a matter of law).

Bruno's statement that plaintiff was approved by TPD2 only as the interim chief is not capable of defamatory meaning. Defamatory words are those "which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter

others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule." *Costello v. Hardy*, 864 So.2d 129, 140 (La. 2004). Plaintiff has not alleged facts plausibly suggesting that Bruno's statement would tend to "prejudice him in the eyes of a substantial and respectable minority" of his community. Restatement (Second) of Torts § 559 cmt. e (1977); *see also Fitzgerald v. Tucker*, 737 So. 2d 706, 716 (La. 1999) (following the Restatement). More specifically, there are no facts in the complaint tending to suggest that anyone in plaintiff's community would think less of him if he were the interim chief rather than the permanent one. *Cf. Sassone v. Elder*, 626 So. 2d 345, 352-53 (La. 1993) (holding that newscaster who asked rhetorical questions insinuating that attorneys had taken advantage of several people had not defamed the attorneys because the questions would not be "reasonably understood to be intended in a defamatory sense so as to harm [the attorneys'] reputations and to lower their community esteem"); Restatement (Second) of Torts § 559 cmt. e illus. 1 (1977) ("A advertises in a newspaper that B, a nurse, uses and recommends to her patients the use of a certain brand of whiskey for medicinal purposes. If a substantial number of respectable persons in the community regard this use of whiskey as discreditable, A has defamed B."); *id.* illus. 3 ("A, a member of a gang of hoodlums, writes to B, a fellow bandit, that C, a member of the gang, has reformed and is no longer to be trusted with the loot

of the gang. A has not defamed B.").

Accordingly, the Court dismisses plaintiff's defamation claims against the Fire District Defendants.

**V. CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motions to dismiss. Plaintiff's claims against Tangipahoa Parish and the Fire District Defendants are dismissed.

New Orleans, Louisiana, this 8th day of September, 2014.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE