```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
```

DAVID S. MAURER                                    CIVIL ACTION

VERSUS                                             NO: 13-5450

TOWN OF INDEPENDENCE,
LOUISIANA, *ET AL.*                                SECTION: R


**ORDER AND REASONS**

Plaintiff David Maurer moves the Court to reconsider the portion of its September 8, 2014 Order and Reasons[1] dismissing Maurer's Due Process claim against two groups of defendants. For the following reasons, the Court grants the motion.

**I.    BACKGROUND**

Maurer is the former chief of the Independence Volunteer Fire Department. After he was fired, he sued 13 defendants under section 1983 for procedural due process violations and under Louisiana state law for violations of Louisiana's "Whistleblower Law" and for defamation of character.[2] The procedural and factual history of this suit is set forth in detail in the Court's September 8 order.[3] Therefore, here, the Court relates

---

[1]  R. Doc. 73.

[2]  R. Doc. 39.

[3]  R. Doc. 73.

only the procedural and factual background necessary to provide context for Maurer's motion for reconsideration.

On September 8, 2013, the Court granted motions to dismiss by two sets of defendants.  Defendant Tangipahoa Parish Rural Fire Protection District Number 2 (Fire District), together with two members of the Fire District's Board of Commissioners, Nicholas Muscarello and Carlo Bruno, and the Fire District's administrator, Dennis Crocker, filed the first motion.[4]  The Court refers to these four defendants together as the "Fire District defendants."  Defendant Tangipahoa Parish filed the second motion.[5]

With this motion to reconsider still pending, Maurer moved for leave to file a second amended complaint.  The Court has since granted that motion.[6]  The second amended complaint adds new details in support of Maurer's Due Process claim, beyond what appeared in Maurer's first amended complaint, to which the Court's September 8 order was addressed.  These new details do not affect the Court's analysis of the arguments in Maurer's motion for reconsideration.  Thus, in the interest of streamlining the record, the Court addresses this order to Maurer's newly filed second amended complaint.

---

[4]    R. Docs. 35 and 47.

[5]    R. Doc. 61.

[6]    R. Doc. 97.

The complaint alleges that in September 2012, the town of Independence and the Fire District decided to make the Independence Volunteer Fire Department (Volunteer Department) the exclusive provider of fire protection services for Independence and the surrounding area.[7] In December 2012, Maurer became the chief of the Volunteer Department.[8] Less than a year later, he was fired.[9] Maurer alleges that Tangipahoa Parish and the Fire District defendants, among others, deprived him of his employment without due process of law, along with other alleged wrongs.

In its September 8 order, the Court dismissed Maurer's Due Process claim after determining that Maurer had not alleged that he had a property interest in his employment. The Court rejected Maurer's arguments that the Louisiana Firefighter Bill of Rights or the Louisiana classified civil service system vested him with procedural protections for his job.

## II. LEGAL STANDARD

Maurer styled his motion as a "motion for new trial" of the Court's September 8 order dismissing his Due Process claim. But an order granting a motion to dismiss is not a "trial." Therefore, the Court will treat the motion as a motion for reconsideration.

---

[7]   R. Doc. 80-4 at 7.

[8]   *Id.* at 9.

[9]   *Id.* at 39.

The Federal Rules of Civil Procedure do not formally recognize a motion for reconsideration. *Bass v. United States Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000). The Fifth Circuit has treated a motion for reconsideration as a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure when filed within the time limit set by the Rule. *See Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004). Under the current version of Rule 59(e), a party must file a motion to alter or amend within 28 days of the entry of the judgment from which relief is sought. Fed. R. Civ. P. 59(e). Here, Maurer filed his motion on October 6, 2014, exactly 28 days after the Court's order. Thus, the Court evaluates the motion under Rule 59(e).

Motions filed under Rule 59(e) question the correctness of a judgment. *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). Rule 59(e) is properly invoked "to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). A district court has considerable discretion to grant or deny a Rule 59(e) motion for reconsideration. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 353 (5th Cir. 1993). A motion for reconsideration is generally not an appropriate vehicle for advancing new arguments that were available at the

time of the original motion. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).

## III. DISCUSSION

Maurer asks the Court to reconsider its dismissal of Maurer's Due Process claim against Tangipahoa Parish and the Fire District defendants. When confronted with a procedural due process claim, a court must determine, first, whether the plaintiff has a property or liberty interest that cannot be taken away without procedural protections; and second, if so, how much process is due. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

The Court's September 8 order rejected Maurer's argument that he had a property interest in his employment by virtue of his status as a "fire employee" under the Louisiana Firefighter Bill of Rights or his status as a classified civil service employee. Because Maurer did not have a property interest in his employment, the Due Process Clause did not entitle him to any procedural protections before his termination.

Maurer now cites new legal authority for his argument that the question whether he is a "fire employee" under the Louisiana Firefighter Bill of Rights, and the question whether he is entitled to the protections of the classified civil service system, are factual questions and thus may not be decided at the

motion to dismiss stage. The Court addresses each contention in turn.

### A. Firefighter Bill of Rights

The Court begins with Maurer's contention that he had a property interest in his employment by reason of a state statute, the Louisiana Firefighter Bill of Rights. The Louisiana Firefighter Bill of Rights mandates that certain "minimum standards" apply whenever a "fire employee" is under investigation, La. Rev. Stat. § 33:2181(B), and provides that "[a]ny discipline, demotion, dismissal or adverse action of any sort taken against a fire employee without complete compliance with the provisions of [the statute] is an absolute nullity . . . ." *Id.* § 33:2181(C). To meet the statute's definition of a "fire employee," two factors must be met. A person must be (1) "employed in the fire department of [a] municipality, parish, or fire protection district," and (2) the employing municipality, parish or fire protection district must "maintain[] a full-time regularly paid fire department." *Id.* § 33:2181(A)(1).

The Court's September 8 Order held that because Maurer did not satisfy the first prong of the statutory definition of "fire employee," the Firefighter Bill of Rights did not apply to him. The Court explained that because Maurer's complaint alleged that he was officially employed by the Independence Volunteer Fire Department, a private corporation, and not by the town of

Independence, Tangipahoa Parish, or the Fire District, Maurer had not alleged that he was "employed in the fire department of [a] municipality, parish, or fire protection district."

Since there are no Louisiana Supreme Court decisions interpreting the definition of "fire employee" in the Firefighter Bill of Rights, the Court supported its holding with an "*Erie* guess" about how the Louisiana Supreme Court would read the statute.  *See Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir. 1999).  The Court "employ[ed] the appropriate Louisiana methodology" to arrive at the result it predicted the Louisiana Supreme Court would reach.  *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004) (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

In Louisiana, the sources of law are legislation and custom.  *Id.*  These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom."  *Id*. (quoting La. Civ. Code art. 1).  In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes."  *Id.* (quoting *Prytania Park Hotel, Ltd. v. General Star Indem. Co.*, 179 F.3d

7

169, 174 (5th Cir. 1999)). In addition, in Louisiana, "[l]aws on the same subject matter must be interpreted in reference to each other." La. Civ. Code art. 13. Finally, and important here: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9.

Thus, the Court began its analysis with the language of the statute. The Court explained that when a statute specifically defines the employer-employee relationship, the statute's definition governs. *See Dejoie v. Medley*, 9 So. 3d 826, 829-30 (La. 2009); La. Civ. Code art. 9. Since the Louisiana Firefighter Bill of Rights provides a clear definition of "fire employee," the Court rejected alternative definitions of "fire employee" that conflicted with the plain language of the statute.

In particular, the Court rejected Maurer's argument that although the Independence Volunteer Fire Department was his *nominal* employer, Tangipahoa Parish, acting "through its special district, [the Fire District]" could qualify as his *de facto* employer, and thus satisfy the statute. As the Court explained: "Allowing an alternative definition, such as plaintiff's proposed *de facto* employer formula, to compete with the statutory definition would defeat the purpose of privileging the statutory text in the first place."

8

Maurer now argues that a brief *per curiam* opinion by the Louisiana Supreme Court, *Marshall v. W. Baton Rouge Parish Fire Prot. Dist. No. 1*, 998 So. 2d 85 (La. 2009), requires a different result.  In *Marshall*, a former employee of a volunteer fire department argued that, as a classified civil service employee, he was entitled to a hearing before being terminated.  *See* La. Rev. Stat. § 33:2561.  Under the statute, if the local Fire Protection District "operated" his fire department, then Marshall would be entitled to a hearing; if not, then not.  According to the *per curiam*, the question whether the Fire Protection District operated the fire department turned on two "factual issues": "what actions constitute the operation of a regularly paid fire department" and "what entity actually employed plaintiff."  *Id.*  Thus, the Louisiana Supreme Court remanded the case for the trial court "to take evidence, hear testimony, and make factual findings regarding what entity employed Mr. Marshall and what entity operates the fire protection services in the City of Port Allen."  *Id.*

Maurer argues that, after *Marshall*, the question "what entity actually employ[s]" a person always presents a factual question.  But *Marshall* concerned a statutory provision that does not define the employer-employee relationship.  The Firefighter Bill of Rights does.  Since the statute provides a definition, that definition governs.  *See Dejoie*, 9 So. 3d at 829-30; La.

9

Civ. Code art. 9. Maurer does not satisfy this definition, because he was not "employed in the fire department of [a] municipality, parish, or fire protection district." La. Rev. Stat. § 33:2181(A)(1). Thus the statute does not apply to him.

**B. Civil Service Protection**

*1. Property Interest*

The Court next addresses Maurer's contention that he has a property interest in his employment by way of the protections of the Louisiana classified civil service system. The Louisiana Constitution provides that all municipalities and fire protection districts operating a "regularly paid fire department" must establish a classified civil service system. La. Const. art. 10 § 16. A state statute, La. Rev. Stat. § 33:2541, lists the positions deemed classified within fire protection districts. It includes all fire department positions for which "the right of employee selection, appointment, supervision, and discharge is vested in the government of the municipality, parish or fire protection district . . . under which the fire . . . service functions." La. Rev. Stat. § 33:2541.

Therefore, Maurer's entitlement to classified civil service protections turns on two questions: (1) whether Tangipahoa Parish or the Fire District "operated" a full-time, regularly paid fire department, and (2) whether Tangipahoa and/or the Fire District retained "the right of employee selection, appointment,

supervision, and discharge" over Maurer.  The Court's September 8 Order decided, as a matter of law, that neither Tangipahoa Parish nor the Fire District "operated" a regularly paid fire department.  Thus, the Court dismissed Maurer's Due Process claim grounded in his alleged entitlement to the protections of the Louisiana classified civil service.  The Court now reconsiders and vacates that decision.

   Maurer's motion to reconsider cites *Marshall*, discussed above, for the proposition that the question whether a parish or district "operated" a regularly paid fire department is a factual question.  Maurer did not cite *Marshall* in his original opposition to defendants' motions to dismiss.  As stated above, a motion for reconsideration is generally not an appropriate vehicle for new arguments that could have been raised earlier.  Nevertheless, the law in this circuit permits the Court to entertain a motion for reconsideration containing new arguments if it determines that those arguments have merit.  *Cf. Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir. 1977) (Fifth Circuit law permits trial judges to "reopen a judgment on the basis of an error of law" when considering a Rule 60(b) motion (citing *Oliver v. Home Indem. Co.*, 470 F.2d 329, 330-31 (5th Cir. 1972))).  Here, Maurer's argument has merit because this Court cannot ignore a decision on point by the Louisiana Supreme Court on a question of state law.

*Marshall* indicates that the question whether a parish or district "operated" a regularly paid fire department is a factual question. The Court concludes that, in light of *Marshall*, the question whether Tangipahoa Parish or the Fire District "operates" a full-time, regularly paid fire department is likewise a factual question that is not appropriate for resolution on a motion to dismiss. Maurer's complaint, together with the documents incorporated by reference into the complaint, allege enough to plausibly raise this issue. In particular, his complaint now incorporates by reference the 2013 blanket contract between the Fire District and the volunteer fire departments in its jurisdiction.[10] While this document is not conclusive on the issue, it provides enough factual content to make plausible Maurer's allegation that the Fire District "operated" a regularly paid fire department.

The Court therefore turns to the second question, which it did not reach in its previous order: whether Tangipahoa and/or the Fire District retained "the right of employee selection, appointment, supervision, and discharge" over Maurer. Two documents attached to or incorporated by reference into Maurer's second amended complaint plausibly support the inference that the Fire District did.

---

[10]   R. Doc. 80-4 at 6 (incorporating 2013 contract by reference); R. Doc. 78 (2013 contract).

First, Maurer attaches his "Approval to Hire" form.[11] The form is labeled "Tangipahoa Parish Rural Fire #2 Position Requisition/Approval to Hire Form."[12] Maurer asserts that this form supports his allegation that the Fire District had a "long-standing practice" of requiring all volunteer fire departments, including the Volunteer Department, to "submit all employment decisions such as new hires, promotions, appointments, and changes in rates of pay" to the Fire District for approval.[13] Maurer also alleges that on December 5, 2012, the Fire District "approved the appointment . . . of [Maurer] as Chief."[14] Likewise, the complaint alleges that after the Volunteer Department voted to hire all of the former Independence Fire Department employees as Volunteer Department employees, the Fire district "approved" the plan.[15]

Maurer further alleges that the Fire District has the authority to "investigate the alleged misconduct of fire employees," to "appoint an individual to conduct an investigation," to "schedule meetings with . . . elected officials to receive complaints against fire employees," and to

---

[11]   R. Doc. 80-6, Ex. 6.

[12]   *Id.*

[13]   R. Doc. 80-4 at 53.

[14]   *Id.* at 9.

[15]   *Id.* at 10.

"orchestrate the removal of any fire employee."[16] Maurer's factual allegations about the investigation into his own performance also plausibly support the inference that the Fire District retained the authority to supervise, investigate, and discharge employees of the Volunteer Department.

Second, Maurer incorporates by reference the 2013 blanket contract between the Fire District and the volunteer fire departments in its jurisdiction.[17] The contract provides that all departments "contracted with the District shall be required to strictly comply with the policies and procedures adopted by the Board of Commissioners of the District."[18] The policies and procedures in turn contain an organizational chart.[19] On the chart, the Fire District appears at the top. Beneath the Fire District appears the "Fire Administrator" and beneath the "Fire Administrator" appears each of the volunteer fire departments, including the Independence Volunteer Department. This document provides additional support for Maurer's allegation that the Fire District retained supervisory control over him and his department. Taking these allegations and documents together, the Court concludes that Maurer has plausibly alleged that his

---

[16] *Id.* at 58.

[17] *See id.* at 6 (incorporating 2013 contract by reference); R. Doc. 78 (2013 contract).

[18] R. Doc. 78 at 4.

[19] *Id.* at 22.

position as fire chief would qualify for the classified civil service.  Thus, at this time, Maurer may support the property interest element of his Due Process claim with an alleged entitlement to civil service protection.

### 2.  Process Due

The Court turns, therefore, to the question what process was due.  When "a governmental employer provides a full post-termination hearing, pretermination due process is limited." *Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 (5th Cir. 1993) (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985)).  In such circumstances, due process does not require a formal hearing, but it does require that the employee be given notice of the action that may be taken against him, and a meaningful opportunity to tell his side of the issue. *See id.* (citing *Loudermill*, 470 U.S. at 546 & n.8).  Maurer's complaint makes no mention of whether a full post-termination hearing was made available to him.  But in any event, he does allege that he was discharged without having received notice or a meaningful opportunity to tell his side of the issue. Specifically, he alleges that in late July 2013, the Fire District board and the Volunteer Department board held various meetings without him present, following which he was placed on administrative leave and then fired.  He further alleges that he was not informed of the alleged basis for his termination until September 4, 2013, over a month after he was fired.

15

The Court finds that Maurer has alleged that each of the Fire District defendants played a role this denial of Due Process. As discussed above, Maurer plausibly alleges that the Fire District retained "the right of employee selection, appointment, supervision, and discharge" over him. Thus, Maurer's discharge without due process may, at this time, be laid at least partly at the feet of the Fire District. Likewise, Maurer alleges that the three individual Fire District defendants played a role in his discharge without Due Process. First, he alleges that Crocker, the Fire District administrator, conducted the investigation and prepared the report supporting his termination on behalf of the Fire District. He also alleges that Crocker helped coordinate some of the meetings leading to his termination. Second, he alleges that Bruno, one of the Fire District's Board members, threatened the Volunteer Department board and told them that the Fire District would "freeze [Volunteer Department] assets" and "dissolve" the Volunteer Department if Maurer remained fire chief.[20] Finally, Maurer alleges that he complained to Muscarello, another Fire District Board member, that "he had been placed on leave and that he had not been given the right to defend himself," and that Muscarello brushed him off and told him that it "did not look good" for

---

[20]   *Id.* at 38.

16

him.[21]  Because Maurer has alleged that each of the Fire District defendants contributed in some way to his termination without Due Process, he may proceed with his Due Process claim against the Fire District defendants.

Maurer has not alleged enough factual content, however, to proceed with his claim against Tangipahoa.  Neither the "Approval to Hire" form nor the 2013 blanket contract mention Tangipahoa Parish Government.  Maurer does not allege that Tangipahoa approved his employment or that Tangipahoa had any role in approving hires for the Volunteer Department.  Maurer also does not allege that Tangipahoa participated in the Fire District's investigation into his performance.  Instead, Maurer repeatedly makes the conclusory allegation that the actions of the Fire District simply *were* the actions of Tangipahoa, "acting through its special district."[22]  According to Maurer, the Fire District and the Parish should be treated as one because the Fire District is "subject to the general authority of the Tangipahoa Parish Council pursuant to the Tangipahoa Parish Code of Ordinances" and because the Parish Council has allegedly always appointed its own current members to the Fire District's Board of Commissioners.[23]

---

[21]  *Id.* at 39.

[22]  *See, e.g., id*. at 53.

[23]  *Id.* at 4.

That the Council has "general power" over the Fire District, *see* Tangipahoa Parish, La., Code of Ordinances pt. I, art. VII, § 7-08(A) (2013), does not mean the actions of the Fire District were "for all practical purposes, the actions of the Tangipahoa Parish Council,"[24] as Maurer asks the Court to hold. The same section of the Tangipahoa Parish Code provides that the parish may "consolidate and merge" with any special district "situated and having jurisdiction entirely within the boundaries of the parish," and that upon this sort of merger, the parish will "succeed to and be vested with all the rights, revenues, resources, jurisdiction, authority, and powers" of the special district. *Id.* § 7-08(B). This consolidation provision supports the conclusion that the Fire District and Tangipahoa are separate entities: if special districts were one with the Parish, then "consolidation and merger" would be meaningless. The consolidation provision also indicates that Tangipahoa does not have the same powers as the Fire District, as there would there be no need for the "rights, . . . authority, and powers" of a special district to vest in the Parish upon a merger if the Parish retained those powers inherently. Nor does an overlap of personnel between the Parish Council and the Fire District Board somehow collapse the two entities into one. Tangipahoa must be treated separately from the Fire District. And without the

---

[24] *Id.*

18

factual allegations about the Fire District's conduct, Maurer's claim against Tangipahoa lacks sufficient factual support to withstand a motion to dismiss. Therefore, the Court dismisses Maurer's Due Process claim against Tangipahoa.

## III. CONCLUSION

The Court DENIES Maurer's motion to reconsider the dismissal of his Due Process claim grounded in his alleged entitlement to the protections of the Firefighter Bill of Rights.

The Court GRANTS Maurer's motion to reconsider the dismissal of his Due Process claim grounded in his alleged entitlement to the protections of the Louisiana classified civil service system as to the Fire District defendants but DENIES the motion as to Tangipahoa.

New Orleans, Louisiana, this 2nd day of March, 2015.

_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE