UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID S. MAURER                                    CIVIL ACTION

VERSUS                                             NO: 13-5450 c/w
                                                   13-5910

TOWN OF INDEPENDENCE,                              SECTION: R
LOUISIANA, ET AL.

**THIS DOCUMENT RELATES TO CIVIL ACTION NO. 13-5910**

**ORDER AND REASONS**

Defendants Tangipahoa Parish Rural Fire Protection District Number 2, Nicholas Muscarello, Carlo Bruno, and Dennis Crocker move for summary judgment on plaintiff's section 1983 procedural due process claim, grounded in his alleged entitlement to the protections of Louisiana's classified civil service system.[1]  For the following reasons, the Court grants the motion.

I.       **PROCEDURAL BACKGROUND**

A.       **Parties**

This 42 U.S.C. § 1983 and state-law defamation suit concerns plaintiff David Maurer's termination from his position as the chief of the Independence Volunteer Fire Department (Volunteer Department).   After he was fired,

---

[1]       R. Doc. 119.

Maurer sued four groups of defendants–thirteen defendants in all.  First, he sued the town of Independence and Independence's mayor, Michael A. Ragusa.[2]  Independence is a political subdivision of Louisiana.

Second, he sued the Volunteer Department and five members of its board of directors: Jeremy Baham, Eric Anthony, Jonathan Tallo, Christopher McKinney, and Anthony Parazzo.  The Volunteer Department is a domestic corporation that provides fire protection services to Independence and the surrounding area.[3]

Third, Maurer sued Tangipahoa Parish Rural Fire Protection District Number 2 (Tangipahoa Fire District), together with two members of Tangipahoa Fire District's Board of Commissioners, Nicholas Muscarello and Carlo Bruno, and the Fire District's administrator, Dennis Crocker.  The Tangipahoa Fire District is a political subdivision of Louisiana.[4]

Finally, Maurer sued Tangipahoa Parish Government, which is also a political subdivision of Louisiana.  Maurer sued all of the individual defendants in their individual and official capacities.[5]

---

[2]    R. Doc. 99 at 2-3.

[3]    *Id.* at 3.

[4]    *Id.* at 2-4.

[5]    *Id.* at 4.

### B.    Maurer's Remaining Claims

On March 2, 2015, the Court dismissed with prejudice all of Maurer's claims against Independence, Jeremy Baham, Eric Anthony, Jonathan Tallo, Christopher McKinney, and Anthony Parazzo.[6] The Court also dismissed with prejudice Maurer's civil rights claim against Mayor Ragusa.[7]  In a separate order, the Court dismissed with prejudice Maurer's claims against the Tangipahoa Parish Government.[8]  On July 7, 2015, the Court dismissed with prejudice all of Maurer's claims against the Volunteer Department.[9]

Accordingly, Maurer's only remaining claims are as follows:

- a Louisiana state-law defamation claim against Mayor Michael Ragusa; and

- a procedural due process claim under 42 U.S.C. § 1983 against the Tangipahoa Fire District, Nicholas Muscarello, Carlo Bruno, and Dennis Crocker.

---

[6]    R. Doc. 97 at 46.

[7]    *Id.* at 45.

[8]    R. Doc. 98 at 19.

[9]    R. Doc. 113 at 12.

## II.   FACTUAL BACKGROUND AND SUMMARY JUDGMENT RECORD

### A.   Admissibility of Summary Judgment Evidence

Under Federal Rule of Civil Procedure 56, a party may support or oppose a motion for summary judgment by citing to particular parts of materials in the record, if that evidence is otherwise admissible.  *See* Fed R. Civ. P. 56(c); *see Arlington Apartment Inv'rs, LLC v. Allied World Assurance Co. (U.S.)*, 612 F. App'x 237, 238 (5th Cir. 2015) ("A court may consider only admissible evidence in ruling on a motion for summary judgment.")

In opposition to defendants' motion for summary judgment, Maurer haphazardly submits numerous documents that are facially irrelevant and inadmissable because the documents are unexecuted, unauthenticated, and incomplete, among other issues.  This is especially problematic because the Court cannot at all determine where these documents originated or what they are supposed to show.  For example, Maurer's Exhibit 5, titled "2013 Contract" is not only unexecuted, but also incomplete.  The language of the contract explicitly provides that there should be a number of attachments accompanying the contract, including a cooperative endeavor agreement between the Tangipahoa Fire District, the Volunteer Department, and the town of Independence.  No such agreement is attached.  Instead, Maurer

attaches agreements pertaining to Ponchatoula, Natalbany, Hammond, and Kentwood, and each agreement is different. Moreover, at a different stage of this litigation, Maurer 0ffered a similar, but materially different document with different provisions, including provisions specific to the Volunteer Department in Independence, in response to an earlier motion to dismiss.[10] *See Maurer v. Town of Independence*, 45 F. Supp. 3d 535, 550 (E.D. La. 2014). In the Court's September 2014 order granting the motion to dismiss, the Court noted that the Volunteer Department's cooperative endeavor agreement with the Tangipahoa Fire District explicitly provided:

> [T]he fire district does not have any direct supervision of the Independence Volunteer Fire Dept., Inc's firefighters [and] no member of the Board of Commissioners of the Tangipahoa Parish Rural Fire Protection District Number Two nor any employee, agent or representation thereof shall direct orders to the Independence Volunteer Fire Dept., Inc.'s employees, firefighters, emergency service providers or officers . . . ."

*Id.* This provision is nowhere to be found in the document Maurer currently presents to the Court and directly impacts the issues the Court must analyze on summary judgment. It is incumbent upon Maurer to offer admissible evidence in opposition to defendants' motion for summary judgment because this impacts the accuracy *vel non* of the record on which the Court is asked to decide the motion.

---

[10]     *See* R. Doc. 73.

5

Absent some demonstration that these documents are admissible, the Court will not consider them. *See Arlington Apartment Inv'rs*, 612 F. App'x at 238 ("Rule 56 does not impose upon . . . the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."). Accordingly, the Court will consider, if relevant, only the following evidence cited in opposition to the motion for summary judgment:

- the September 16, 2014 declaration by Justin Morel (Maurer's Exhibit 14);

- the July 29, 2015 declaration by Arlene Hall (Maurer's Exhibit 15);

- two August 3, 2015 declarations by Pete Giamalva (Maurer's Exhibits 19-20); and

- the August 3, 2015 declaration by David Maurer (Maurer's Exhibit 21).

**B.     Summary Judgment Record**

Maurer began working as a firefighter for the town of Independence in October 2009.[11]   At that time, the Fire Department of the Town of Independence and the Volunteer Department jointly provided fire protection services for the town and the surrounding area.[12]

In September 2012, Independence decided to close its fire department and hire the Volunteer Department as its exclusive provider of fire protection services.[13]  Consistent with this plan, the Board of Directors of the Volunteer Department voted to hire Maurer as Fire Chief in December 2012.[14] Independence's former fire chief, defendant Dennis Crocker, became Administrator of the Tangipahoa Fire District.[15]   In January 2013, Independence formally terminated its firefighter employees, and the Volunteer Department immediately rehired those firefighters.[16]   Maurer officially assumed his role as Fire Chief.

---

[11]     R. Doc. 119-1 at 1; R. Doc. 120 at 2.

[12]     R. Doc. 120 at 2..

[13]     *See id.* at 3.

[14]     R. Doc. 119-2 at 1 ¶ 4; R. Doc. 120-1 at 1 ¶ 4.

[15]     R. Doc. 120 at 3.

[16]     Doc. 119-1 at 1; R. Doc. 120-at 3.

Under this new organizational structure, the Tangipahoa Fire District divided Tangipahoa Parish into "fire protection service areas" for which the Volunteer Department and the fire departments in other cities or towns would be responsible.[17]   The Tangipahoa Fire District maintains taxpayer millage funds, which it allocates according to a percentage formula to the various fire departments.[18] Independence's Volunteer Department receives seven percent of all Tangipahoa taxpayer millage funds earmarked for fire protection services.[19]

During his tenure as Fire Chief under this new organizational structure, Maurer oversaw the daily activities of the Volunteer Department, which included organizing Volunteer Department meetings, managing the Volunteer Department's bank accounts, and determining who to hire and fire as employees of his Volunteer Department.[20]   Maurer retained much autonomy in the position of Fire Chief.  For example, Maurer changed the way fire trucks responded to emergency medical calls.[21]   Dennis Crocker, who was then

---

[17]      R. Doc. 120- at 3.

[18]      *See* Deposition of David Maurer, July 16, 2015, at 57:22 - 58:6.

[19]      *Id.*

[20]      Deposition of David Maurer, July 16, 2015, at 35:20 - 36:12, 41:1-11,  55:9 - 13,  91:6 - 19.

[21]      *Id.* at 68:12 - 69:7

8

serving as Administrator of the Tangipahoa Fire District, believed that the Volunteer Department's fire trucks should have responded differently. Nonetheless, Maurer testified that he did not change his emergency response plan because Crocker was not his boss.[22]   Maurer also sent the Volunteer Department's new firefighters to training in Hammond, Louisiana, though in the past, new firefighters received training in Baton Rouge.[23]   Crocker told Maurer that he believed Maurer should instead send the new firefighters back to Baton Rouge.[24]   Nonetheless, Maurer testified that he did not change his decision because he did not think that it was in the Volunteer Department's best interest to send the firefighters to the training conducted in Baton Rouge.[25]   Maurer repeatedly testified that his decisions contrary to Crocker's advice were without consequence because Crocker was not Maurer's boss.[26]

Regarding the Volunteer Department's financial structure, Maurer testified that the Volunteer Department maintained three bank accounts: a "savings" account, an "operations" account, and a general Volunteer

---

[22]     *Id.* at 69:11 - 25.

[23]     *Id.* at 70:25 - 71:25.

[24]     *Id.* at 71:8 - 17.

[25]     *Id.* at 71:20 - 72:9.

[26]     *Id.* at 69:23 - 25, 73:16 - 17, 90: 13 - 14.

Department account.[27]  The savings account was short-lived and infrequently used.[28]  The Volunteer Department used the operations account solely for payroll.  The Tangipahoa Fire District deposited tax dollars allocated to Independence into the Volunteer Department's operations account.  The Volunteer Department would then use the taxpayer funds in its operations account to pay its firefighter employees.[29]  These firefighters received checks and W-2 income tax return forms from the Volunteer Department, not Tangipahoa Fire District.[30]

The Volunteer Department used its general account to maintain donations collected from Department fundraisers.[31]  The Volunteer Department would spend its general account funds on things like equipment that the Department's firefighters wanted to purchase.[32] The Tangipahoa Fire

_____

[27]        *Id.* at 35:4 - 36:12.

[28]        *Id.* at 35:11 - 19, 49:1 - 8.

[29]        *See id.* at 35:4 - 10, 48:11 - 19.

[30]        *See id.* at 38:23 - 39:6.

[31]        *Id.* at 36:5 - 12.

[32]         *Id.* at 37:13 - 38:25.

District had no control over the funds in the Volunteer Department's general account because that money did not consist of taxpayer funds.[33]

Regarding how the Volunteer Department hired new employees, Maurer testified that the employment process differed for volunteer firefighters and paid firefighter employees.  For volunteer firefighters, interested persons would fill out an application, and the existing firefighters, both volunteer and paid, voted on whether to accept the applicant as a volunteer.[34]  For paid firefighter employees, Maurer testified that interested persons would fill out an application and submit it directly to him, as the Volunteer Department's Fire Chief.  Maurer would review the application with the Volunteer Department's assistant fire chief and decide whether the person should be hired.  If Maurer and the assistant fire chief decided to hire the applicant, the Tangipahoa Fire District would then approve the Department's new hire.[35] According to Maurer, the Tangipahoa Fire District never refused to approve

---

[33]     *Id.* at 48:14 - 49:2, 51:21 - 52:3; *see also* R. Doc. 119-4 at 2 ¶ 13 (Declaration of Dennis Crocker) ("Fire departments with which District 2 has a cooperative endeavor agreement can spend their own (non-parish taxpayer) money however they see fit, without any oversight by District 2.")

[34]     Deposition of David Maurer, July 16, 2015, at 41:2 - 4.

[35]     *See id.* at 41:1 - 11.

11

a new hire for the Department and never ordered the Department to hire someone that the Department had not specifically selected.[36]

Less than a year after Maurer assumed the position of Fire Chief, in July 2013, the Board of Directors of the Volunteer Department met and voted to suspend Maurer from his duties as Fire Chief.[37] Shortly thereafter, on July 29, 2013, the Board of Directors of the Volunteer Department met again and formally terminated Maurer as Fire Chief via written letter.[38]

The Tangipahoa Fire District, Muscarello, Bruno, and Crocker now move for summary judgment on Maurer's procedural due process claim.[39] Defendants argue that the facts undisputedly illustrate that the Tangipahoa Fire District was not Maurer's *de facto* employer.[40] In opposition, Maurer argues that the Tangipahoa Fire District had the power to select and engage

---

[36]   Deposition of David Maurer, July 16, 2015, at 47:22 - 48:10.

[37]   *See* R. Doc. 119-2 at 2 ¶ 14; R. Doc. 120-1 at 3 ¶ 14; Deposition of David Maurer, July 16, 2015, at 104:19 - 24.

[38]   *See* R. Doc. 99-1 at 4; Deposition of David Maurer, July 16, 2015, at 107:2 - 10.

[39]   R. Doc. 119.

[40]   *See* R. Doc. 119-1 at 1-2.

all paid firefighters, to pay wages to all paid firefighters, to dismiss all paid and volunteer firefighters, and to control all paid and volunteer firefighters.[41]

## III.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the movant will bear the burden of proof at trial, the movant "must come forward with evidence which would

---

[41]     R. Doc. 120 at 5.

entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.  *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## IV.   DISCUSSION

Maurer's section 1983 claim against defendants Tangipahoa Fire District, Nicholas Muscarello, Carlo Bruno, and Dennis Crocker depends on whether the Tangipahoa Fire District was Maurer's *de facto* employer.  If so, then Maurer had a property interest in his *de facto* employment with the Tangipahoa Fire District by virtue of his status as a classified civil service employee.  If not; then not.

The Louisiana Constitution provides that all municipalities and fire protection districts operating a "regularly paid fire department" must establish a classified civil service system.  La. Const. art. 10 § 16.  A state statute, Louisiana Revised Statute § 33:2541, lists the positions deemed classified within fire protection districts.  It includes all fire department positions for which "the right of employee selection, appointment, supervision, and discharge is vested in the government of the municipality, parish or fire protection district . . . under which the fire . . . service functions."  La. Rev. Stat. § 33:2541.  Thus, whether Maurer's position as Fire Chief was a classified position under Louisiana law depends on whether the Tangipahoa Fire District had the right to select, appoint, supervise, and discharge Maurer.

15

The statutory criteria parallel the Louisiana jurisprudential test for determining whether an employer-employee relationship exists. In Louisiana, the employer-employee relationship is evidenced by four primary factors: (1) selection and engagement, (2) payment of wages, (3) power of dismissal, and (4) power of control. *See Harrington v. Hebert*, 789 So. 2d 649, 653 (La. App. 3 Cir. 2001) (citing *Boswell v. Kurthwood Manor Nursing Home*, 647 So. 2d 630, 631 (La. App. 3 Cir. 1994)) (worker's compensation); *see also Berthelot v. Stallworth*, 884 So. 2d 648, 654 (La. App. 4 Cir. 2004) (vicarious liability). None of these factors alone is determinative. *Harrington*, 789 So. 2d at 653.

Defendants point to much evidence in the record demonstrating that the Tangipahoa Fire District did not select, appoint, supervise, or discharge Maurer. First, in response to defendants' motion for summary judgment, Maurer admits that the Board of Directors of the Volunteer Department hired him as the Department's Fire Chief.[42] Maurer likewise admitted that the Board of Directors of the Volunteer Department voted to suspend him and voted to fire him.[43] Immediately after this second vote, the Volunteer Department sent

---

[42]    R. Doc. 119-2 at 1 ¶ 4; R. Doc. 120-1 at 1.

[43]    R. Doc. 119-2 at 2 ¶ 14; R. Doc. 120-1 at 3 ¶ 14; Deposition of David Maurer, July 16, 2015, at 107:3 - 10.

Maurer a notice of termination.[44] Accordingly, the undisputed evidence shows that the Volunteer Department, not the Tangipahoa Fire District, was vested with "the right of employee selection, appointment [and] discharge," as required by Louisiana Revised Statute § 33:2541.

Second, regarding how the Volunteer Department firefighters were paid, defendants do not seriously dispute that the funds used to pay the firefighters' salaries are taxpayer funds.[45] The Tangipahoa Fire District finances the Volunteer Department through a percentage appropriation of the total amount it collections from taxpayers earmarked for fire protection services. According to Maurer's testimony, the Tangipahoa Fire District collected taxpayer millages, allocated percentages of these funds to each fire department, and deposited the appropriate amount in each department's account.[46] Beyond disbursing taxpayer funds, however, the Tangipahoa Fire District had no

---

[44]     *See* R. Doc. 99-1 at 4 ("Chief David Maurer . . . was notified in writing on July 29, 2013 that he has been relieved of his duties *by the Board of Directors of the Independence Volunteer Fire Department, Inc.*" (emphasis added)).

[45]     R. Doc. 119-4 at 2 ¶ 12 (Declaration of Dennis Crocker) ("Fire departments with which District 2 have a cooperative endeavor agreement inform District 2 when they want to hire an employee and have that new employee's salary funded by parish taxpayer money. This is for auditing purposes, as District 2 does not hire the fire department's employee or issue the fire department employee's paycheck.").

[46]     *See* Deposition of David Maurer, July 16, 2015, at 57:22 - 58:6.

involvement in paying firefighters' wages.  According to Maurer's testimony, the Volunteer Department maintained a specific "operations" account for payroll purposes.[47]  The paychecks issued to each firefighter came from the Volunteer Department.[48]  And the Volunteer Department issued W-2 income tax forms to its firefighters at the end of each year.[49]  This evidence shows that the Volunteer Department was responsible for paying its employees' wages. There is no evidence in the record illustrating that Maurer was paid any differently.[50]  *Cf. France v. E. Cent. Bossier Fire Prot. Dist. No. 1*, 4 So. 3d 959,

---

[47]    Deposition of David Maurer, July 16, 2015, at 35:1 - 10.

[48]    *Id.* at 39:2 - 4.

[49]    *See id.* at 39:2 - 6.

[50]    In opposition to the motion for summary judgment, Maurer submits two declarations—one by him, and one by a firefighter in another town named Justin Morel.  Maurer declares that his salary as fire chief "was to begin at $41,400" for his first six months of service, "then it was to increase to $45,000[.]"  R. Doc. 120-22 at 1. Maurer also declares that Carlo Bruno told Maurer that he would have to wait until he had served as fire chief for one year to receive a raise and that "payroll records will show that [Maurer] followed the ruling of Carlo Bruno."  *Id.*  Justin Morel makes a similar declaration with regard to his own salary.  *See* R. Doc. 120-15 at 2.
    Ignoring that Maurer neglected to submit any payroll records or to point the Court to any other record evidence substantiating his declaration, the Court finds that this evidence does not refute that Maurer, like all other firefighters, was paid with checks written by the Volunteer Department, out of the Volunteer Department's operations account.  Maurer has not presented any evidence to show that he was paid directly by the Tangipahoa Fire District.
    Morel's declaration consists of two sentences explaining that his Fire

18

at 964-65 (La. App. 2 Cir. 2009) (finding that a firefighter directly paid by a fire protection district is a classified civil service employee).

Third, the evidence shows that although Maurer regularly interacted with the Tangipahoa Fire District, the District did not directly supervise or control Maurer's day-to-day work. The Tangipahoa Fire District had no control over funds that the Volunteer Department raised through donations, and the Volunteer Department regularly used its donation money to purchase equipment and other items for the firefighters.[51] In addition, Maurer testified that, during his tenure as Fire Chief, he implemented a number of changes to how the Volunteer Department operated. No one associated with the Tangipahoa Fire District ordered Maurer to cease these efforts or to implement changes that Maurer had not otherwise imposed. Importantly, Maurer testified three separate times that Dennis Crocker, Administrator of

---

Department "set [his] salary . . . at $1,800" per month and that the Tangipahoa Fire District "set [his] salary at $900.00 per month." R. Doc. 120-15 at 2. Morel provides no further evidence or information regarding the structure of his fire department or how its employees are paid. This is insufficient to create a genuine issue of material fact in the face of opposing evidence that is specifically directed toward the plaintiff in this case.

[51]    *See id.* at 36:5 - 38:25, 48:14 - 49:2, 51:21 - 52:3; *see also* R. Doc. 119-4 at 2 ¶ 13 (Declaration of Dennis Crocker) ("Fire departments with which District 2 has a cooperative endeavor agreement can spend their own (non-parish taxpayer) money however they see fit, without any oversight by District 2.")

the Tangipahoa Fire District, was not his boss.[52]  This evidence shows that the Fire District did not directly control Maurer's work as Fire Chief.

In sum, defendants have pointed the Court to record evidence demonstrating that Maurer is unable to satisfy his burden of proving that the Tangipahoa Fire District exercised sufficient control over his selection, appointment, supervision, and discharge to be considered Maurer's *de facto* employer.  Because Maurer cannot satisfy the elements of Louisiana Revised Statute § 33:2541, he cannot prove that his position as Fire Chief was a civil service position.  Accordingly, his section 1983 procedural due process claim against the Tangipahoa Fire District, Dennis Crocker, Nicholas Muscarello, and Carlo Bruno must fail.

---

[52]    *Id.* at 69:23 - 25, 73:16 - 17, 90: 13 - 14.

## V.     CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' Motion for Summary Judgment.


New Orleans, Louisiana, this 30th day of November, 2015.


_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE